[Crim. No. 39527. Second Dist., Div. One. Apr. 27, 1982.]

In re CURT W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CURT W., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Carole S. Morita and J. Courtney Shevelson, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BULGRIN, J.*—**

*Assigned by the Chairperson of the Judicial Council.

## STATEMENT OF CASE

### A.

On December 17, 1980, an adjudication hearing, based upon a two-count petition filed November 13, 1980, against appellant under Welfare and Institutions Code section 602, was heard by Judge Robert T. Altman of the Los Angeles Superior Court. Appellant was represented by the public defender and the proceedings reflected that basically involved was a charge of unlawful attempted taking (Veh. Code, § 10851) on November 11, 1980, of one motorcycle, and another charge of malicious mischief with respect to a certain Corvette automobile. Five witnesses, including appellant, testified during a fairly extensive session.

Judge Altman found count I of the petition to be true and that the minor thereby fell within the Juvenile Court Law. A modicum of evidence was heard on the damage to the car involved in count II, but the charge was not found to be true.

The court was then advised appellant had still another petition pending involving a charge of taking a 1964 Lincoln. Judge Altman thereafter reviewed appellant's record, made an order detaining him, and set the disposition hearing to trail the other matter. He made no declaration as to whether or not the motorcycle case was to be treated as a felony or a misdemeanor.

### B.

On January 5, 1981, the other adjudication hearing came on before Judge Jack Newman. This concerned another Welfare and Institutions Code section 602 petition charging appellant with the unlawful taking on December 6, 1980, of a 1964 Lincoln (Veh. Code, § 10851). Two witnesses were called. Appellant did not testify. He was represented by the same public defender who vigorously conducted his defense in the December 17, 1980, hearing.

Although not specifically so denominated, appellant appeared to urge a motion to suppress a statement made by appellant at the police station and presented a *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], argument. Judge New-

man held the *Miranda* rule was not violated and the statement was admissible.

Judge Newman found this petition to be true and that appellant was a person described under Welfare and Institutions Code section 602. Judge Newman made no declaration as to whether or not the offense was a misdemeanor or felony. (The minute order for that date shows the offense was declared a felony.)

A supplemental report was requested by Judge Newman. He also ordered the disposition thereon to be accomplished by the judge (Altman) handling the pending disposition hearing on the first petition of November 13, 1980.

## C.

On January 23, 1981, the disposition hearing came before Judge Robert Altman. The court indicated a probation report of January 5, 1981, supplemental probation report dated January 19, 1981, a letter from Dr. Cofelt, and a psychological evaluation had all been read and considered.

On the other petition regarding the 1964 Lincoln, heard by Judge Newman on January 5, 1981, Judge Altman declared it to be a felony, the principal offense and set the term at three years.

Then the court immediately proceeded to compute sentence in the motorcycle case, over which he personally had presided, using one-half of the upper term to calculate six months as one-third thereof. The aggregate was set at three years, six months. No specific declaration was ever made by Judge Altman as to whether or not that matter was a felony or a misdemeanor either at the adjudication or disposition hearing.

(The minute order for Jan. 23, 1981, has a check placed before the printed words: "Offense is declared to be a felony/misdemeanor." with neither alternate crossed out.)

## D.

Appellant filed a timely notice of appeal from the order of Judge Jack Newman dated January 5, 1981, and also from the order by Judge Robert Altman dated January 23, 1981.

## Statement of Facts

1. A few highlights of the events involved in the petition filed on November 13, 1980, against appellant and heard by Judge Altman follow. This short review throws a sharper focus on one aspect of the second issue on appeal which is broader in scope than appears at first glance. As will appear hereafter, appellant really presents several concerns about the method of conducting the combined disposition hearing on the two separate petitions.

On November 11, 1980, about 7 p.m. an off-duty California Highway Patrol (CHP) officer left his home where he had a Kawasaki motorcycle parked by a truck and covered up in good order. There was a bike chain from the fork to the frame locked by a padlock. On return one and one-half hours later, the motorcycle was fifteen feet south of its former location. A tarpaulin and also a blue canvas cover were each removed and in a pile. The motorcycle was lying up against a Corvette owned by another CHP officer. The cover on the latter vehicle was ripped where it had not been before. Two side covers on the motorcycle were removed and stacked on a luggage rack on the rear. The side covers protected the area housing the ignition and wiring which runs to that central location. The wires were all pulled out from a normal compressed state but were not disconnected.

The CHP officer noticed a movement and saw two feet in white tennis shoes as well as a right arm protruding out from under the Corvette. He asked appellant to slide out and noticed his hands were covered with dirt and grease. This was about five feet from the motorcycle. There was no grease on the ground underneath the Corvette. It was "immaculate" as was the stall. Appellant denied he had been "messing" with the motorcycle, said someone else had and that he had been sitting on the wall "smoking dope."

A police department officer, Matthews, stated the defendant said en route to the police station that ". . . he wasn't trying to steal the motorcycle, that he was merely looking at it and . . . he had observed the motorcycle to be locked with a chain." Nothing was said about a guitar until the day of the court hearing and no comment was made of any beating.

For the defense, appellant's mother testified briefly, mentioning a guitar her son had and then appellant himself took the stand. He testi-

fied extensively on his behalf. He stated his guitar was stolen that evening and he was "going crazy" looking for it. He went over a wall and "some man came running at him with a gun saying he was going to blow my head off . . . ." It was after that "I dove under the car." He said an officer "beat me up" and he never had touched the motorcycle. Appellant's version of what happened at the scene was in ". . . a total different way . . ." from the officer's testimony.

Judge Altman found the petition true and appellant was within the Juvenile Court Law. (Count II, on damage to the Corvette, fell by the wayside, landing in the area of possible restitution.)

Judge Altman was advised of the other petition and given some of the facts regarding the taking of the 1964 Lincoln. Included was the fact appellant was driving, that he stated initially it belonged to his mother and she, upon being contacted, indicated she did not own it. The court also went over appellant's prior record beginning in 1978 with "a drunk" followed by "runaway," a 1979 "receiving stolen property," a "10851" on October 19, 1979, a burglary in March 1980 with "654" supervision, plus the November 11, 1980, case herein, arising while appellant was awaiting trial in Glendale for an October 4, 1980, "10851." ". . . now we have another one," apparently refers to the 1964 Lincoln.

Judge Altman made a strong point of how closely he observed appellant on the witness stand: ". . . there is something serious going on in his life . . . and with this rash of offenses . . . ." "Well, I regard these kinds of offenses as serious."

2. On January 5, 1981, Judge Jack Newman presided over appellant's adjudication hearing concerning the taking of a white 1964 Lincoln.

The victim testified she was the owner of the car, it was parked the night before and was missing on the morning of December 6, 1980. The keys had been left in the car.

On that same day officer Michael Crosby observed a white 1964 Lincoln Continental being driven in such a way that several Vehicle Code violations were committed. The car was stopped and appellant was the driver. He did not have a vehicle registration or a driver's license and said the car belonged to his mother. There was a male passenger 35-40 years old. Appellant told the officer ". . . the male was a friend. He didn't know his name and that he had picked up the male hitchhiking

somewhere in Hollywood." The older male was not detained by the police. Officer Crosby ran a Department of Motor Vehicles check and the license plate came back reported as "sold." Appellant was asked "how come the vehicle wasn't registered to his mother." Appellant replied ". . . he didn't know why not."

The officer then administered a field sobriety exam to appellant which was performed satisfactorily. He was detained, however, for not having identification and transported to the Hollywood station. Appellant was actually arrested in the field under Vehicle Code section 40302, subdivision (a) involving three violations of rules of the road.

At the police station Officer Crosby's partner talked by telephone to appellant's mother and he advised Crosby that she did not own a 1964 Lincoln Continental. Crosby had an "inkling that the car might be stolen."

At some point the officers tried to determine ownership of the vehicle. Officer Crosby's partner contacted Department of Motor Vehicles in Sacramento for "new owner information" and received one name that was contained in the report. He called the person's mother. The latter said the car had been sold to "somebody." It was not until 45 minutes later she called back with the name and address of the new owner.

Between the time appellant's mother was contacted and the last mentioned call receiving the new owner information, Officer Crosby said some words to appellant to the effect "The car's not yours." He testified he did not attempt to interrogate appellant who had not yet been given his constitutional rights. Officer Crosby did not know the car was stolen. At the time he approached appellant and made the statement, the latter was sitting handcuffed on a bench in a hallway location with no public access.

Officer Crosby was about five feet from appellant when he made the statement. The officer then turned and walked away a short distance to a doorway to the records room. His partner was sitting in there processing something and Officer Crosby had his back turned to the appellant.

About five to ten seconds after the officer's statement was made, appellant "blurted out" in effect ". . . that the car was stolen, that the male white who was in the car when we stopped during the original stop had stolen the car, that he told the minor the car was stolen and that

the unknown male white had picked up the minor while hitch-hiking and had let him drive the car."

CONTENTIONS ON APPEAL

I.

The juvenile court committed prejudicial error in admitting evidence of a statement made by appellant without prior *Miranda* warnings.

II.

The juvenile court did not properly determine whether the charges sustained against appellant were felonies or misdemeanors.

III.

The juvenile court erroneously calculated the consecutive term for the joyriding offense.

DISCUSSION OF CONTENTIONS ON APPEAL

I.

In the adjudication hearing of December 17, 1980, involving a Vehicle Code section 10851 charge of unlawful taking of the 1964 Lincoln Continental on December 6, 1980, Judge Jack Newman admitted the statement of appellant at the police station over the objection of the public defender. The basis of contention is that the court ruling constituted prejudicial error.

■ We hold appellant's statement to be admissible. It obviously was not the result of express custodial questioning and, further, was not the product of the "functional equivalent" of custodial interrogation.

The hearing court made a brief ruling on the admissibility of the statement as follows: "Well, the words, 'The car's not yours,' I think under some circumstances would in essence be the kind of accusation that an officer should have known would reasonably be likely to elicit an incriminatory response but I will conclude that under the facts of this case where he turns and walks away from him that he might not have reasonably known that that would be the case here."

Appellant contends "The court erred in focusing upon the officer's intention rather than appellant's perceptions of the circumstances at the police station." Perhaps appellant's strained interpretation of the court's remarks was caused by some small degree of ambiguity of articulation therein. However, the generalization ". . . under *some* circumstances . . ." led to the phrase ". . . *but* I will conclude that *under the facts of this case* . . . he might not have reasonably known . . . ." (Italics added.) It is clear that the words and actions of the officer had not been held, under our circumstances, to have been reasonably foreseen to elicit an incriminatory statement.

Appellant's contentions on their face ignore footnote 7 of *Rhode Island* v. *Innis* (1980) 446 U.S. 291 at pages 301-302 [64 L.Ed.2d 297, at page 308, 100 S.Ct. 1682], "This is not to say that the intent of the police is irrelevant, for it may well have a bearing on whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response."

The juvenile court herein expressed in so many words that the officer's actions in turning and walking away satisfied two important aspects of the *Innis* decision. This conduct cannot be underplayed as it set the tone and scope of an incident of very short duration. Turning on his heel demonstrated that he abandoned the contact.

The minor himself could reasonably perceive that the officer had tossed off a remark at him and had absolutely no intention to engage in further communication. The situation was not then conducive to further conversation from anyone's standpoint and does not smack of a sophisticated police ploy under any inference to be drawn from the events.

In *Rhode Island* v. *Innis, supra*, 446 U.S. 291 at pages 300-302 [64 L.Ed.2d 297 at pages 307-308] the court stated: "We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard

to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (Fns. omitted.)

The court then considered the facts of that case and concluded the respondent therein was not "interrogated" within the meaning of *Miranda.* The suspect had been advised of his constitutional rights at the scene and he indicated he wanted to speak to a lawyer. Thereafter a conversation between two patrolmen involving concern over danger posed to children in the area of the murder by the missing shotgun, in a four-door police car taking respondent to the police station under arrest on a murder charge, was held to be nothing more than a brief dialogue between the two officers to which no response from the respondent was invited. No express questioning was involved during the trip and the court held that the respondent was not subjected to the "functional equivalent" of questioning. "There is nothing in the record to suggest that the officers were aware that the respondent was peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children. Nor is there anything in the record to suggest that police knew that the respondent was unusually disoriented or upset at the time of his arrest." (Fn. omitted.) (*Rhode Island* v. *Innis, supra,* 446 U.S. at pp. 302-303 [64 L.Ed.2d at p. 309].)

The court then narrowed down its discussion with language which is applicable to our case at hand: "The case thus boils down to whether, in the context of a brief conversation, the officers should have known that the respondent would suddenly be moved to make a self-incriminating response. Given the fact that the entire conversation appears to have consisted of no more than a few offhand remarks, we cannot say that the officers should have known that it was reasonably likely that Innis would so respond. *This is not a case where the police carried on a lengthy harangue in the presence of the suspect. Nor does the record support the respondent's contention that, under the circumstances, the officers' comments were particularly 'evocative.'* It is our view, therefore, that the respondent was not subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him." (Italics added.) (*Rhode Island*

v. *Innis, supra*, 446 U.S. at p. 303 [64 L.Ed.2d at p. 309].) The substance of the "dialogue" in the *Innis* case, of course, was of importance to the court's holding therein. We thus turn our attention to the very nature of the one brief statement by Officer Crosby to appellant.

The words "The car's not yours" conveyed somewhat mixed signals. Not to be overlooked is the fact appellant had never specifically *said* the 1964 Lincoln was his. According to his claim it belonged to his mother. At the scene on the Department of Motor Vehicles contact, the automobile came back reported "sold." When appellant was asked ". . . how come the vehicle wasn't registered to his mother," he kept his head and said "he didn't know why not."

That was all Officer Crosby knew about the status of the vehicle until a telephone contact was made with appellant's mother at the police station. The "new owner information" received from Department of Motor Vehicles in Sacramento also was still unresolved. At that point he had an "inkling" but did not know the car was stolen.

Thus, there were scant few pieces of the puzzle sorted out when Officer Crosby made his statement to appellant. Things were in an unsettled state of affairs, to say the least. In that context of the few developments of the case, the officer's remark could hardly be called anything but a tentative, and somewhat uncertain, statement not reasonably seen by him to invite a response.

With respect to the appellant's perception of the statement, the officer's somewhat awkwardly phrased comment cannot be said to have been particularly provocative. Any response at all from appellant at that point could have been anticipated to be a shrug, or a "so what."

Whatever more could be said in that respect, the short scenario of this de minimus exposure to a cryptic and somewhat vague remark was punctuated by the officer's quick movements in beginning and terminating the contact. The hearing court correctly underscored that aspect of the situation in its ruling.

We also conclude that, the ruling of reversal in the case of *In re Albert R.* (1980) 112 Cal.App.3d 783 [169 Cal.Rptr. 553] decided also by the Second District of the Court of Appeal, Division One, would not cause a similar ruling in the case at hand.

The focus of the inquiry in that case, as here, involved the rule in *Rhode Island* v. *Innis* (1980) *supra*, 446 U.S. 291. Albert was arrested after considerable evidence was gathered linking him with the offense of grand theft automobile. The only issue advanced by the minor was that his inculpatory statement was obtained in violation of his *Miranda* rights. Reliance was principally on the *Innis, supra*, interpretation of forbidden interrogation. Albert was read his *Miranda* rights and declined to talk. Thereafter, in a patrol car on the way to county jail the officer ". . . began telling Albert he was a terrible person, was not very bright because he kept committing crimes and kept getting caught; that his big mistake and the way he got caught this time was having the same girl friend and returning back to her. In referring to his background, Ortiz said he told Albert: 'That was sure a cold thing you did to Jim Hackett, selling him that hot car.' Ortiz testified that in response to this last statement of Ortiz, Albert said: 'Yes, but I made the money last. I'm using the last of it now.'" (*In re Albert R., supra*, 112 Cal. App.3d 783, at p. 788.)

The court held that this conversation labelled "chitchat" by the officer was forbidden custodial interrogation within the meaning of *Miranda* and *Innis*. "There was nothing subtle about the officer's statements to defendant. They were *blatantly* and *flagrantly accusatorial*. As such, Officer Ortiz should have known that his accusations were reasonably likely to obtain inculpatory statements from Albert, the minor." (*In re Albert R., supra*, 112 Cal.App.3d 783, at p. 793. Italics added.)

Although the issue is identical, by no stretch of the imagination do the facts of our case herein come even close to those recited in *In re Albert R., supra*, as contended by appellant.

## II.

Each of the two petitions filed in November and December 1980 against appellant was found to be true by the judge hearing the evidence. It was also declared by both that appellant was a person described in section 602 of the Welfare and Institutions Code.

Neither judge at the time of adjudication hearings expressly declared whether or not the offense sustained was punishable as a felony or misdemeanor.

At the conclusion of appellant's petition before Judge Altman it trailed the other petition then pending in front of Judge Newman. After that case was also heard, the two matters came on before Judge Altman on January 23, 1981, for a combined disposition hearing.

 Judge Altman then declared the case heard by Judge Newman was a felony and also that it was the principal offense. The court failed to make a declaration either at the adjudication or disposition hearing that his own case regarding the motorcycle was to be treated either as a felony or a misdemeanor. He simply fixed sentence thereon as pertains to a felony. This was done immediately after setting the term of the principal offense at three years.

Neither judge's omission at the adjudication hearing to declare a felony or misdemeanor status can be called a "failure." Deferring such a declaration to the time of the disposition hearing is clearly authorized by law.

However, Judge Altman's failure to make a declaration *at any time* in the motorcycle case he heard does violate the express statutory mandate that such a declaration be made by the court. We hold that this denies the appellant a right of sufficient dimension to warrant further proceedings being conducted in this respect and in one other area conceded by respondent.

This court further holds that the declaration at the disposition hearing made by Judge Altman that the case heard by Judge Newman was a felony and the principal offense was correct under the law, and sound policy. In section 701 of the Welfare and Institutions Code, dealing with adjudication hearings, it is required in part that at the hearing, the court shall first consider only the question whether the minor is a person described by Welfare and Institution Code section 602. Proof beyond a reasonable doubt supported by evidence legally admissible in the trial of criminal cases must be adduced to support a finding that the minor is a person described by Welfare and Institutions Code section 602.

Section 702 of the Welfare and Institutions Code provides in part: "After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by section 300, 601 or 602."

If affirmative, the court ". . . shall then proceed to hear evidence on the question of the proper disposition to be made of the minor." It is also provided that before doing so the court may delay the disposition hearing to obtain the Probation Office social study ". . . or to receive other evidence" on its own motion "or the motion of a parent or guardian. . . ."

At the very end of the section it is stated: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."

Under the provisions of Welfare and Institutions Code section 702 the court has wide discretion in conducting the disposition hearing.

Turning to the California Rules of Court, rule 1355(f) provides as follows: "If, after hearing the evidence, the court determines that the allegations of the petition are true, it shall make findings as to each of the following, noted in the minutes of the court:

" . . . . . . . . . . . . . . . .

"(5) If the minor is found to be a person described by section 602, the degree of the offense and whether the offense would be a misdemeanor or felony had the offense been committed by an adult. *These determinations may be deferred until the disposition hearing.*" (Italics added.)

Rule 1371 of the California Rules of Court also contain wide-ranging provisions regarding the disposition of the minor by the court. It covers the nature of the hearing, the social study prepared by the probation officer, procedural aspects ". . . relevant and material evidence . . .", that can be offered by various parties and the court itself, as well as dealing with other judgments and orders.

Rule 1373(a) states: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a felony or misdemeanor *if that determination has not previously been made.*" (Italics added.)

It is beyond question that the felony or misdemeanor declaration can be deferred by the adjudication hearing judge to the disposition hearing. Due to the wide latitude given the court during the disposition process it would actually appear to be a sound practice in many cases to do so. It seems clear that Judge Newman adopted that option, particularly in the face of another pending petition which had just been held to be true by Judge Altman.

There is no provision of the Welfare and Institutions Code or the California Rules of Court or any authority which even suggests that a juvenile court judge in the same superior court cannot handle the disposition hearing of an adjudication hearing presided over by a different judge. This is especially clear when it is kept in mind a minor can be found to be a person described by section 602 of the Welfare and Institutions Code, whether by a finding of the court the petition is true after hearing evidence proving the charge beyond a reasonable doubt, or by the admission of the minor himself of the truth of the allegations. In the latter situation a judge would handle the disposition hearing in the same way as Judge Altman presided over the combined disposition proceedings. On a petition admitted to be true, the court would have to turn to all of the resources available in rule 1371 before making a felony or misdemeanor declaration and, ultimately, effect a "proper disposition" of the minor. Judge Altman did just that with a petition held to be true and a Welfare and Institutions Code section 602 finding.

The logic of such flexibility in handling the proceedings is reinforced by the possible proliferation of contemporaneous matters pending against any given minor. The concept of two or more separate judges holding disposition hearings on separate cases against one individual where admissions had been received or petitions found to be true on evidence boggles the mind. Thus, sound policy dictates that consolidation of dispositional matters where logistically feasible best serves the interests of all concerned, including the minor.

Lest any stone of alleged prejudicial proportions be left unturned on appellant's "wrong judge" theory, this court has included herein some of the highlights involved in the motorcycle case heard by Judge Altman regarding the attempted taking in violation of section 10851 of the Vehicle Code. It demonstrates without doubt that he was the *right judge* to handle all phases of the disposition hearing. As the result of that experience he had substantial knowledge and special insight into

defendant's activities and his unique problems. Indeed, Judge Altman presided over a fairly long adjudication hearing and demonstrated sensitivity and concern for the minor's entire situation. This was abundantly true both at that time and later in the disposition hearing. (Appellant's contention that the fact the 1964 Lincoln was left unlocked and the keys were inside would mitigate against a finding the offense was a serious felony borders on the frivolous in the light of the entire picture.)

(In the adjudication matter filed on Nov. 13, 1980, and heard by Judge Altman, the clerk's minutes reflect that the court made no order as to the felony or misdemeanor declaration. This is a true reflection of the actual proceedings and is in compliance with rule 1355(f)(5). However, it is disturbing to find the minutes for the adjudication hearing before Judge Newman show the court made an order the offense was a felony. This was inaccurate as no such order had been then made by the court. Equally dismaying is an entry in the minutes of the disposition hearing before Judge Altman simply showing a check mark before the words "offense is to be declared a felony/misdemeanor." It thus seems to indicate an order was made but not what order or in which case. With these passing comments, this court deplores such lack of attention to keeping in the minutes an accurate account of the court's activities and rulings.)

The proceedings themselves show that Judge Altman correctly made the disposition order that Judge Newman's case would be a felony, set the term at three years and declared it the principal offense. However, Judge Altman failed to make a specific declaration in the matter that he had heard. It is most unlikely Judge Altman was unaware of the felony or misdemeanor alternative available in handling the motorcycle case and the requirement of a specific declaration to be made. Even so, on the heels of his sentencing on Judge Newman's felony matter, he immediately segued into the computation of sentence on the motorcycle offense on a felony basis without enunciating a specific declaration it was to be treated as a felony.

The Court of Appeal for the Fourth District, Division One, in *In re Jeffery M.* (1980) 110 Cal.App.3d 983 [168 Cal.Rptr. 337] reversed and remanded with direction. It found the facts "substantially indistinguishable" with those in *In re Dennis C.* (1980) 104 Cal.App.3d 16 [163 Cal.Rptr. 496].

In the *Jeffery* case, no specific declaration of felony or misdemeanor status had been made. The court stated "... it is *highly improbable* the court intended to classify the offenses as misdemeanors." (Italics added.)

However, "... the statute means what it says, and requires the court *to expressly consider the classification* of the underlying offense and make a specific finding. Courts should do what the law requires. Nothing should be subject to surmise. To affirm these orders is to encourage sloppy performance of duty." (Italics added.)

The *In re Dennis C., supra*, 104 Cal.App.3d 16 case held that the juvenile court erred in not declaring appellant's offenses were felonies or misdemeanors. Reversal of the dispositional order and remanding was ordered. The key language at page 23 is: "*The contention that the court indirectly complied* with the mandatory provisions of section 702 and the rules of court by committing appellant for the maximum term that can be imposed on the battery and forgery violations *is not persuasive.* As appellant has argued, it is entirely possible that the judge simply sentenced Dennis C. as a felon *without considering* the possibility of sentencing him as a misdemeanant. Because of this *possible oversight*, we have no alternative but to remand the matter to the juvenile court for clarification." (Italics added.)

As in *In re Jeffery M., supra*, 110 Cal.App.3d 983, the facts in our case herein are "substantially indistinguishable" from *In re Dennis C., supra*, 104 Cal.App.3d 16. To remove that nagging doubt that Judge Altman gave consideration to possible misdemeanor disposition on the one case under the conditions of the combined hearing, we are persuaded to remand to mend the breach.

### III.

Lastly, as respondent has conceded, the juvenile court erred by incorrectly computing the term to be fixed on that same matter. Judge Altman chose the "upper term" of eighteen months for the attempted "joyriding" offense in imposing a consecutive term of six months. One-third of the middle term for a felony conviction was the proper criterion and it was 12 months. Thus, assuming the juvenile court on remand declares the charge of attempted Vehicle Code section 10851 a felony, a consecutive term for a felony punishment would be only four months, for a total term of no more than three years and four months.

The matter is remanded to the juvenile court with directions to conduct a further disposition hearing for the purpose of declaring whether or not the offense of attempted taking of the motorcycle in violation of Vehicle Code section 10851 is a felony or misdemeanor.

If the court declares the matter to be a felony, the court is further directed to vacate the present sentence of six months and impose a sentence thereon of no more than four months, consistent with this opinion. In the event the court declares the sentence to be a misdemeanor, the juvenile court is also directed to impose sentence accordingly, consistent with applicable law.

The order of January 5, 1981, is affirmed. The order of January 23, 1981, is remanded with instructions to proceed consistent with this opinion. In all other respects the order is affirmed.

Spencer, P. J., concurred.

Lillie, J., concurred in the judgment only.

Appellant's petition for a hearing by the Supreme Court was denied June 24, 1982.