[No. D016868. Fourth Dist., Div. One. Sept. 17, 1993.]

In re ANDRES M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANDRES M., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

--------

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, III and V.

### COUNSEL

Howard C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

BENKE, J.—Appellant Andres M. appeals from a disposition by the juvenile court committing him to the California Youth Authority (CYA) for a maximum confinement of 10 years.

### BACKGROUND

On February 18, 1992, before Judge Federico Castro, Andres M. admitted allegations contained in juvenile court petition No. 00158229 (JDA No. 75157). Specifically, he admitted two felony counts of violating Vehicle Code section 10851 on the dates of October 7, 1991 (count I) and February 3, 1993 (count II). He also admitted to misdemeanors of driving without a

license on February 3, 1992 (count V) and giving false identification to a police officer on February 3, 1992 (count VI). A variety of other charges were dismissed. Following the admissions, Judge Castro informed Andres M. the overall maximum term for the offenses he had admitted was seven years, four months. A disposition hearing was set for March 10, 1992.

On March 10, 1992, Judge Castro continued the disposition hearing to March 19, 1992.

On March 19, 1992, at Andres M.'s request, the disposition in JDA No. 75157 was continued by Judge Castro to April 21, 1992, in order to allow Andres M. to seek an alternative to CYA commitment.

On April 10, 1992, prior to the April 21, 1992, disposition in JDA No. 75157, another petition was filed against Andres M. in JDA No. 75990. This petition alleged that on December 30, 1991, Andres M. committed a burglary of an inhabited dwelling in violation of Penal Code section 459 (count I).[2]

On April 13, 1992, Andres M. appeared before Judge Jones and denied the burglary charge in JDA No. 75990. The readiness hearing in JDA No. 75990 was set for April 21, the same day as the disposition hearing in JDA No. 75157.

On April 21, 1992, before Judge Jones, an unreported chambers conference occurred. At its conclusion, the court ordered the contested disposition hearing in JDA No. 75157 to trail the adjudication hearing set in JDA No. 75990. That adjudication hearing was set for May 5, 1992.

On May 5, 1992, before Judge Jones, Andres M. was found to have committed residential burglary and the JDA No. 75990 petition was sustained. The disposition hearing was set for May 18, 1992.

On May 18, 1992, Judge Jones informed Andres M. his maximum term of confinement was 10 years. He was committed to the CYA.[3]

---

[2]The burglary charged was not known to authorities at the time JDA No. 75157 was filed in February 1992. It appears that on March 12, 1992, appellant's probation officer received a telephone call from Detective Scott of the San Diego Police Department. Scott advised the probation officer that they had just received a positive identification on appellant's fingerprints which linked him to a burglary in December 1991. Scott indicated she was currently in the process of referring the matter to the district attorney's office for prosecution.

[3]The record reflects this 10-year maximum was calculated based upon JDA No. 75990, JDA No. 75177 and 2 previous petitions filed in 1990.

### DISCUSSION

### I-III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV

In his supplemental opening brief, Andres M. argues the trial court failed to expressly declare that the auto theft offenses (Veh. Code, § 10851) were felonies. As Andres M. points out, such a declaration is required by Welfare and Institutions Code section 702 because violation of Vehicle Code section 10851 may be treated as either a misdemeanor or a felony. Although we recognize the trial court failed to perform the duty required by the statute, given the circumstances presented in this record we do not believe any remand is necessary to correct the error.

Our disposition of this issue is governed largely by the fact the record here could not be clearer that neither Andres M. nor his counsel expected misdemeanor treatment of the instant auto theft findings. Andres M. admitted the truth of the auto theft allegations which included, in both instances, an allegation the thefts were felonies. In exchange for this plea to felonies, the district attorney agreed to dismiss the remaining allegations of the initial petition, including felony drunk driving charges. Andres M. also agreed that for purposes of disposition the remaining charges could be considered by the trial court. While Andres M. was awaiting disposition on the auto theft findings, he confessed to participation in a residential burglary, a "straight" felony. (Pen. Code, § 459.)

In addition to Andres M.'s admissions, the trial court had Andres M.'s juvenile record. Prior to the instant offenses, he was found to have committed two prior auto thefts for which he spent almost an entire year at the county ranch facility.

As one might expect given Andres M.'s history, at the dispositional hearing the only dispute was over whether Andres M. would be sent to the youth authority or to a youth authority alternative, Rite of Passage (ROP). In arguing for ROP, Andres's counsel candidly admitted that any sentencing program would have to provide the public with protection. In rejecting ROP, the trial court stated: "I note after his release from camp on a 10851, he was arrested again for a 10851.

"I note that while he was at the Y.D.C. program—which is a transitional phase from our camp program—within eight days of his release from

---

*See footnote 1, *ante*, page 1092.

Y.D.C., this young man committed yet another auto theft. This is when he's in confinement at our camp program.

"I note that after his release, he was arrested again on October 7th for an auto theft. He was released to his brother. On December 30th, 1991, the residential burglary was committed. He was still out, and then on February 3rd, 1992, arrested yet again for another auto theft.

"At some point, someone has to be concerned about the safety of the public, and in all candor, this young man, in an open setting, is a predator, and the car or a house or whatever suits his fancy will be the next victim.

"Fortunately, we have not lost a life, but clearly the facts of these offenses even speak to that."

Given this record we are unwilling to remand this matter solely so that the trial court will have the opportunity to declare what we believe is obvious: the auto thefts were treated as felonies and counsel, the trial court, and the juvenile, have never entertained any serious notion that they are anything other than felonies. (See *In re Michael S.* (1983) 141 Cal.App.3d 814, 818 [190 Cal.Rptr. 585].) Indeed, Andres M. does not argue the record here requires misdemeanor sentencing, but only that the statute required a declaration by the trial court.

We recognize that in interpreting Welfare and Institutions Code section 702, the cases have uniformly held the statute requires an express and unambiguous declaration from the trial court. (See *In re Ricky H.* (1981) 30 Cal.3d 176, 190-191 [178 Cal.Rptr. 324, 636 P.2d 13]; *In re Kenneth H.* (1983) 33 Cal.3d 616, 620 [189 Cal.Rptr. 867, 659 P.2d 1156]; *In re Dennis C.* (1980) 104 Cal.App.3d 16, 23 [163 Cal.Rptr. 496]; *In re Jeffrey M.* (1980) 110 Cal.App.3d 983, 984-985 [168 Cal.Rptr. 337]; *In re Curt W.* (1982) 131 Cal.App.3d 169, 185-187 [182 Cal.Rptr. 266].) However, these cases do not directly confront the question of what a reviewing court should do when a violation of section 702 has occurred. Rather the cases interpreting section 702 uniformly assume, without discussion, that a reviewing court confronted with a breach of section 702 has no choice but to reverse and remand with directions that the trial court make the declaration required by the statute.

Recently the assumption made in the cases interpreting Welfare and Institutions Code section 702—that violation of a statute prescribing the form of a judicial act requires reversal—was squarely rejected by the Supreme Court. In *In re Richard S.* (1991) 54 Cal.3d 857, 865-866 [2 Cal.Rptr.2d 2, 819 P.2d 843] (*Richard S.*), the court found that, notwithstanding rule 244 of the California Rules of Court, which requires a written

stipulation waiving the right to trial by a superior court judge, an oral stipulation is sufficient to vest jurisdiction in a referee. "A statutory requirement may impose on the state a duty to act in a particular way, and yet failure to do so may not void the governmental action taken in violation of the duty. [Citations.] This distinction is generally expressed in terms of [categorizing] the duty 'mandatory' or 'directory.' '[T]he "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' [Citation.]

". . . In determining whether statutory language is mandatory or directory, ' "[i]n the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation]. . . ." ' [Citations.]" (*Richard S., supra,* 54 Cal.3d at pp. 865-866.)

Earlier, in *People* v. *McGee* (1977) 19 Cal.3d 948 [140 Cal.Rptr. 657, 568 P.2d 382], the court stated: " ' "No one should be at liberty to plant himself upon the nonfeasances or misfeasances of officers . . . which in no way concern himself, and make them the excuse for a failure on his part to perform his own duty. On the other hand, he ought always to be at liberty to insist that directions which the law has given to its officers *for his benefit* shall be observed." ' (Italics added.)

". . . ' "There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffective. Such generally are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory. . . . But when the requisitions prescribed are intended for the protection of the citizen, . . . and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. . . ." " (*People* v. *McGee, supra,* 19 Cal.3d at pp. 962-963, fn. omitted.)

 In light of *Richard S.* and *People* v. *McGee,* the pertinent question is whether the requirement of an express declaration is designed to protect a

minor's rights or serve some collateral, administrative purpose. (See *In re Lamonica H.* (1990) 220 Cal.App.3d 634, 644 [270 Cal.Rptr. 60].) In finding no substantial interest of the juvenile implicated in the statute, we note that beyond the simple declaration required by the statute, there is no requirement the trial court set forth its reasons for treating an offense as a felony rather than a misdemeanor and we are not aware of any statute, rule or case which sets forth factors which must be considered in making such a determination. (See *In re Jacob M.* (1989) 210 Cal.App.3d 1178, 1180-1181 [258 Cal.Rptr. 754].) Indeed the narrow role of the declaration required by Welfare and Institutions Code section 702 was discussed at some length in *In re Michael S., supra*, 141 Cal.App.3d at pages 817-818. "[I]t must be stressed that despite the unfortunate language utilized in section 702, various superior court 'minute order' forms, cited appellate court decisions, and even subdivision (f) of article I, section 28, of the California Constitution itself, 'declare' as it may, a court can never actually convert a juvenile proceeding into a criminal one, nor transform the conduct that led to a minor's wardship into either a 'felony' or a 'misdemeanor.' In such an action a minor is not charged with a crime, tried for a crime, nor convicted of a crime. [Citations.]

"In fact, since a minor ward, at worst, may only be confined in a Youth Authority facility, rather than imprisoned, his conduct could not correctly be classified as a 'felony' even if it had been perpetrated by someone actually subject to punishment as an adult. [Citation.] Consequently, the 'most important' purpose to be served by the required declaration is the determination of the maximum theoretical period of the minor ward's potential confinement. [Citations.]" (141 Cal.App.3d at pp. 817-818, fns. omitted.)

Here the "most important purpose"—determination of the maximum theoretical period of confinement—was entirely satisfied when, in accepting Andres's plea, the trial court determined the maximum period of confinement on the auto thefts, including custody credits, would be seven years, four months. When Andres was later found to have committed a residential burglary, felony treatment of the auto theft charges was confirmed again when the court determined the maximum sentence would be 10 years: 6 years for the burglary and one-third the midterm for the auto thefts.

Admittedly the requirement of an express declaration provides assurance the trial court is aware of the possibility of misdemeanor sentencing. (See *In re Dennis C. supra*, 104 Cal.App.3d at p. 23; *In re Jacob M.* (1987) 195 Cal.App.3d 58, 65 [240 Cal.Rptr. 418].) However, we believe it is important to distinguish between a minor's interest in having a trial court fully consider available sentencing options and a minor's interest, if any, in the means by which such consideration is articulated in the record.

In this regard Welfare and Institutions Code section 702 is similar to California Rules of Court rule 244, discussed by the Supreme Court in *In re Richard S.* In finding the requirement in rule 244 of a written waiver of the right to trial before a superior court judge directory rather than mandatory, the Supreme Court quoted our earlier opinion in *In re Lamonica H., supra,* 220 Cal.App.3d 634: " 'Where a party to a proceeding heard by a referee has in fact expressly or impliedly agreed that the referee may sit as temporary judge pursuant to article VI, section 21 of the Constitution, it is difficult for us to fathom what legitimate interest the party has in the method by which his agreement is memorialized. Whether consent is oral, written, express or implied, if in fact a party agrees to proceed before a referee, his reasonable expectations have been fulfilled. Thus the detailed procedure set forth in rule 244 appears to us designed to serve collateral interests of the judicial system. By requiring a written instrument, the rule prevents disputes as to whether parties have in fact consented and the scope of their consent. [Citation.] . . . . [This interest is] entirely unrelated to [the litigant's] interest in having his dispute heard in a competent and unbiased tribunal.' [Citation.]" (*In re Richard S., supra,* 54 Cal.3d at p. 866.)

Welfare and Institutions Code section 702 is subject to much the same analysis. The requirement of an express statement from the trial court makes it far easier to determine the trial court has in fact considered and rejected the potential for leniency which exists when a crime permits both misdemeanor and felony sentencing. However, where, as here, a given record discloses a tacit understanding by the juvenile and his counsel that misdemeanor treatment is not appropriate, the juvenile has little, if any, legitimate interest in nonetheless requiring an express statement rejecting misdemeanor sentencing. Thus we believe the declaration required by Welfare and Institutions Code section 702, like California rules of Court rule 244, was designed to serve principally administrative purposes and may therefore be treated as directory rather than mandatory.

In short then, although the requirements of Welfare and Institutions Code section 702 were not met in this case, no remand is necessary here because the declaration required by the statute would not affect Andres's legitimate interests.

V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante,* page 1092.

The maximum commitment is ordered modified to reflect that as to counts I and V of the February 4, 1992, petition, the maximum term of confinement is eight months as to each. In all other respects the judgment is affirmed.

Work, Acting P. J., concurred in the result.

**TODD, J.,** Concurring and Dissenting.— I concur except as to part V of the majority opinion, to which part I dissent for the reasons expressed in *People* v. *Michaels* (S033940) review granted August 26, 1993.