[Crim. No. 33696. Second Dist., Div. Five. June 8, 1979.]

In re ISSAC G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ISSAC G., Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, Jonathan B. Steiner and William Wesley Patton, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Carol Wendelin Pollack, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—A referee of the juvenile court found that the minor came within the provisions of Welfare and Institutions Code section 602 because on two occasions—February 27, 1978, and March 28, 1978—he had committed the offense of burglary. (Pen. Code, § 459.)[1] The referee

---

[1]The minor admitted that he had committed a burglary on or about February 27, 1978. Although he denied that he had committed another burglary on March 28, 1978, substantial evidence was presented to support the allegation. That evidence showed that at about 6 or 6:30 p.m. on the day in question the minor and another boy burglarized the apartment of a Howle Clapper. They stole a camera, a CB radio, and a pair of binoculars.

found that the March 28 burglary was in the second degree and, pursuant to Welfare and Institutions Code section 726, committed the minor to the Youth Authority for a period of confinement not to exceed three years.[2] The February 27 burglary was declared to be a misdemeanor and confinement, not to exceed one year, was to be served concurrently with that for the other offense. The minor's request for a rehearing was denied. He now appeals, attacking only the validity of the three-year term of the Youth Authority period of confinement.

The minor contends that Welfare and Institutions Code section 726—which defines the maximum period for which a minor can be physically confined as "the longest of the three time periods set forth in" the Determinate Sentencing Act—is unconstitutional under *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375]. Basically, he argues that since an adult could not be sentenced to the upper base term without a showing of aggravated circumstances (Pen. Code, § 1170, subd. (b)), it is a denial of equal protection for a minor adjudged a ward of the juvenile court to be subject to that term without a comparable showing.

Two recent Court of Appeal decisions directly support the minor's claim (*In re Eric J.* (4 Civ. 18082, 1978); *In re Dennis C.* (5 Civ. 3794, 1978).) The Supreme Court, however, has granted hearings in both.*

Since the issue is before the Supreme Court, it probably makes little difference what we say in attempting to dispose of this case. Nevertheless, since we feel quite strongly that we are reaching a point where over-eager applications of equal protection principles threaten to frustrate the special purposes of the juvenile court law, we vent our thoughts.

Initially we note that we have no quarrel with the proposition that *Olivas* is pertinent to the issue involved here, even though *Olivas* itself involved a trial in adult court. What really bothers us is the conclusion of *Eric J.* that "a juvenile processed as a juvenile in the juvenile court committed to [the California Youth Authority] is similarly situated to an adult in the criminal court sentenced to state prison." (*In re Eric J., supra,* fn. omitted.) The plain fact is that this is not so—even if we concede, as we must, the basic holding of *Olivas* that "confinement is confinement," whether it is in jail, prison or in a CYA facility. The auspices of

[2]Second degree burglary is an alternate felony-misdemeanor. As a felony, it has a range of terms of sixteen months, two years and three years. (Pen. Code, §§ 461, 18.)

*Reporter's Note: See 25 Cal. 3d 522 for Supreme Court opinion in *In re Eric J.* On January 17, 1980, the Supreme Court retransferred *In re Dennis C.* to the Court of Appeal, Fifth Appellate District, for reconsideration in light of *In re Eric J.* See 104 Cal. App. 3d 16 for subsequent opinion.

confinement to the CYA are totally different from those which accompany an adult to jail or to prison. As *Eric J.* itself recognizes, the result of its holding is that a juvenile "has the best of both worlds." He "obtains the benefits of the Indeterminate Sentencing Law within the juvenile system with the opportunity of being released earlier than the outer limits of his commitment and the benefits of a limitation of a maximum term determined in accordance with the adult penal system." (*Id.*)[3]

While *Eric J.* noted this incongruity it was not troubled by it because it found it to be in harmony with the rehabilitative purposes of the juvenile court system. The Determinate Sentencing Act however, states in no uncertain terms that the purpose of imprisonment for crime is punishment. (Pen. Code, § 1170, subd. (a)(1).) And that, precisely, is the rub; surely the different purposes of the adult Determinate Sentencing Act and of the indeterminate juvenile procedure prohibit the facile equal protection analysis for which appellant contends. Were it otherwise, it is difficult to escape the conclusion that in a proper case it is the adult who can claim that—vis-à-vis his youthful accomplice (cf., *People* v. *Olivas, supra,* at p. 242)—it is he whose equal protection rights are being violated: regardless of the "maximum term of imprisonment" imposed by sections 726 and 731 of the Welfare and Institutions Code, the juvenile is eligible for release as soon as the CYA is satisfied that the conditions therefor are established. The adult, on the other hand, must serve out his term—be it the lower, middle or upper—even if it is established beyond a doubt that he is as rehabilitated as Jean Valjean the day he enters prison. He may well ask what "compelling" state interest is served by keeping him behind bars for at least 16 months (Pen. Code, § 18), while his youthful companion-in-crime may be released by the California Youth Authority after a few weeks? In short: is it necessarily always the juvenile whose ox is gored? If the answer is "no"—as we submit it must be—the answer to the question whether juvenile law must be brought in line with adult law or vice versa will depend on what kind of case first reaches the court with the ultimate clout.

In *Alex T.* v. *Superior Court* (1977) 72 Cal.App.3d 24, 30 [140 Cal.Rptr. 17], we warned against taking "bits and pieces from the Penal Code" and engrafting them onto the Juvenile Court Law. The result is liable to be misshapen at best, unworkable at worst. The fallacy rests, we submit, on

---

[3]The *Eric J.* court referred, of course, to the fact that the time periods of confinement prescribed by the Penal Code for adults are, essentially, determinate. Confinement by the California Youth Authority is, on the other hand, quite indeterminate. Under subdivision (f) of section 1766 of the Welfare and Institutions Code, the youthful committee may be discharged from California Youth Authority control whenever the authority is satisfied "that such discharge is consistent with the protection of the public."

confusion between due process and equal protection. *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428] and its spawn did not hold, as so many of these cases seem to suggest, that what's sauce for the goose is necessarily sauce for the gosling, even if the sauce is not constitutionally compelled.

One final observation: our main reason for believing that sections 726 and 731 of the Welfare and Institutions Code do not violate equal protection is that we are asked to compare a system of determinate sentences for adults with one of indeterminate sentences for juveniles. Candor compels us to note that, in a manner of speaking, that was also true in *Olivas,* where the Supreme Court compared a determinate misdemeanor sentence of six months with a potential California Youth Authority confinement of over three years.[4] In *Olivas,* however, presumably because the defendant's confinement had already far exceeded the adult maximum, the court did not discuss the possibility that under section 1766 of the Welfare and Institutions Code actual California Youth Authority control may be much shorter than the six months maximum county jail term faced by an adult.[5] The point on which we base our disagreement with *Eric J.* and *Dennis C.* was, therefore, not discussed.

The judgment is affirmed.

Stephens, J., and Ashby, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 1, 1979.

---

[4]In point of fact, as the court points out in footnote 10 (*People* v. *Olivas, supra,* 17 Cal.3d at p. 242) under the circumstances of Olivas' case "the potential duration of his incarceration [was increased] by a factor of 14."

[5]The court did discuss the possibility of release on parole. (*Id.,* at pp. 244-245.) It held that such release still constituted a "significant restraint on . . . freedom."