[Crim. No. 42925. Second Dist., Div. Two. Apr. 12, 1983.]

In re MICHAEL S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL S., Defendant and Appellant.

COUNSEL

Robert B. Le Corvec, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Daniel J. Kremer, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, and William H. Davis, Jr., Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**GATES, J.**—Michael S., a minor, appeals from the suitable placement order (Welf. & Inst. Code, § 602) that was entered following a finding that he had

possessed a nunchaku in violation of Penal Code section 12020. He contends: "I. The juvenile court erroneously denied appellant's motion to suppress the evidence procured from the illegal search of his person. II. The juvenile court did not properly determine whether the charges sustained against appellant were felonies or misdemeanors."

Viewing the entire record in the light most favorable to the order of wardship in accordance with the usual rule governing appellate review (*In re Dennis B.* (1976) 18 Cal.3d 687, 697 [135 Cal.Rptr. 82, 557 P.2d 514]), the evidence establishes that at approximately 7:20 a.m., on March 8, 1982, Los Angeles Police Detective William A. Williams and his partner were on routine patrol in an alley where there had been many complaints of criminal activities, ranging from vehicle tampering to narcotics violations, and where many arrests for such offenses had been made. On this occasion the officers observed appellant "secreted or standing between two parked cars," looking first into one and then into the other as if examining them. As the officers slowly drove by, appellant stepped behind a large dumpster and then continued to move around it in such a fashion that he blocked himself from the officers' view.

The officers stopped and called to appellant. After appellant "stood up," Officer Williams exited his vehicle, identified himself, and explained why he was curious about appellant's actions. He testified that as they spoke appellant "acted very nervous, started breathing very rapidly, hyperventilating, and became boisterous and angry and very antagonistic." Appellant clenched and unclenched his fists and became, in Detective Williams' words, "borderline combative."

This behavior continued to escalate, notwithstanding Detective Williams' advisement that he "calm down." When appellant either would not, or could not, do so, Detective Williams, for his own protection and safety, patted appellant down for offensive weapons. In so doing, he felt a hard object in appellant's pocket which appellant spontaneously identified as a nunchaku.

■ Appellant's first contention is meritless. In so determining, we need not consider the potential impact of subdivision (d) of article I, section 28, of the California Constitution, colloquially referred to as Proposition 8, since in this instance the officers' actions were proper when measured by any standard.

Appellant's observed conduct was such as to give rise to a reasonable suspicion that it might involve criminal activity. The officers, therefore, had both the right and the duty to detain him for investigative purposes. A person seen peering into cars in an area where the incidence of tampering with and theft of vehicles is a frequent problem, and who then appears to be concealing himself from a passing observer, provides a basis for routine questioning. (*In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957].)

Equally meritless is appellant's assertion that his pat-down constituted an unwarranted violation of his constitutional rights. The officers were here faced with a suspect who was nearly 6 feet tall and weighed approximately 190 pounds. When they attempted to question him, he displayed aggressive conduct and was either unable or unwilling to control himself. Under such circumstances, they were not required to await an actual assault before assuring themselves that the detainee was not armed with a lethal weapon.

■   Appellant's second contention also fails. Citing such decisions as *In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13], *In re Dennis C.* (1980) 104 Cal.App.3d 16 [163 Cal.Rptr. 496], and *In re Jeffery M.* (1980) 110 Cal.App.3d 983 [168 Cal.Rptr. 337], appellant asserts that the court did not adequately comply with the mandatory provisions of section 702 of the Welfare and Institutions Code. We find this not to be the case.

Initially, it must be stressed that despite the unfortunate language utilized in section 702,[1] various superior court "minute order" forms, cited appellate court decisions, and even subdivision (f) of article I, section 28,[2] of the California Constitution itself, "declare" as it may, a court can never actually convert a juvenile proceeding into a criminal one, nor transform the conduct that led to a minor's wardship into either a "felony" or a "misdemeanor." In such an action a minor is not charged with a crime, tried for a crime, nor convicted of a crime. (Welf. & Inst. Code, § 203; *T. N. G.* v. *Superior Court* (1971) 4 Cal.3d 767, 775-776 [94 Cal.Rptr. 813, 484 P.2d 981]; *In re Tony S.* (1978) 87 Cal.App.3d 429, 432-433 [151 Cal.Rptr. 84]; *In re Leonard R.* (1977) 76 Cal.App.3d 100, 104 [142 Cal.Rptr. 632].)

In fact, since a minor ward, at worst, may only be confined in a Youth Authority facility, rather than imprisoned, his conduct could not correctly be classified as a "felony" even if it had been perpetrated by someone actually subject to punishment as an adult. (See Pen. Code, § 17, subds. (a) and (c).)[3]

---

[1]At issue here is that portion of section 702 which states: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."

[2]This subdivision provides in pertinent part: "Any prior felony *conviction* of any person in any criminal proceeding, whether adult *or juvenile,* shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." (Italics added.)

[3]"(a) A felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions. . . . (c) When a defendant is committed to the Youth Authority for a crime punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, the offense shall, upon the discharge of the defendant from the Youth Authority, thereafter *be deemed misdemeanor for all purposes.*" (Italics added.) (Pen. Code, § 17, subds. (a) and (c).)

Consequently, the "most important" purpose to be served by the required declaration is the determination of the maximum theoretical period of the minor ward's potential confinement. (*In re Kenneth H.* (1983) 33 Cal.3d 616, 619, fn. 3 [189 Cal.Rptr. 867, 659 P.2d 1156].)

Nevertheless, the pejorative overtones of the label "felony," technically inaccurate though it is, are not without consequence. (See *In re Mikkelsen* (1964) 226 Cal.App.2d 467, 470 [38 Cal.Rptr. 106].) We, therefore, respectfully suggest to the Legislature that even if it does not determine to redraft the juvenile law in its entirety, a project we understand is presently under consideration, it give serious thought to eliminating the tautological litany presently mandated by Welfare and Institutions Code section 702. Of course, after due consideration the majority of its members may still believe it appropriate to require a juvenile court to announce the abstract, but usually pragmatically irrelevant, limits of a ward's potential confinement by reference to the maximum statutory penalty that could be imposed upon a mature individual or a youth over 16 years of age who was unfit for treatment as a juvenile, if such a person had conducted himself in a similar fashion. (Welf. & Inst. Code, §§ 726 and 731.)[4] Nonetheless, they might find no reason to continue having these recitals accompanied by a characterization of a ward's behavior that is both legally false and needlessly stigmatic. The present ritual seems but another example of the increasing tendency to blend and blur the criminal and juvenile systems without regard to their differing goals in a fashion that is a service to neither.[5]

For the present, however, we conclude that in this instance the court adequately complied with both the letter and the spirit of section 702, as it now reads, when it caused the following dispositional order to be entered in its official minutes:

"Offense is declared to be a felony. [¶] Minor may not be held in physical confinement for a period to exceed 3 years less credit for 42 days served. . . . [¶] Per stipulation of counsel and order of the court, at the end of a period of one year from this date, the offense shall be reduced to a misdemeanor and the maximum confinement time reduced to one year provided that during the in-

---

[4]The creation of such limitations was not necessarily compelled by our Supreme Court's decision in *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375]. (See pp. 242-243 and particularly fn. 4, p. 240.)

[5]As Justice Kaus, the author of *In re Kenneth H., supra,* 33 Cal.3d 616, earlier noted, "In *Alex T.* v. *Superior Court* (1977) 72 Cal.App.3d 24, 30 . . . ), we warned against taking 'bits and pieces from the Penal Code' and engrafting them onto the Juvenile Court Law. The result is liable to be misshapen at best, unworkable at worst. The fallacy rests, we submit, on confusion between due process and equal protection. *In re Gault* (1967) 387 U.S. 1 . . . and its spawn did not hold, as so many of these cases seem to suggest, that what's sauce for the goose is necessarily sauce for the gosling, even if the sauce is not constitutionally compelled." (*In re Issac G.* (1979) 93 Cal.App.3d 917, 920-921 [156 Cal.Rptr. 123].)

terim minor shall have performed well on probation, and the order will be deemed to have been made as of this date.''

An adult to whom such legal terms as ''felony'' and ''misdemeanor'' are truly appropriate may obtain reclassification under various, albeit different, circumstances (see Pen. Code, §§ 17, 1170, subds. (d) and (f), 1203.4) and no reason suggests itself why a minor ward may not be accorded similar consideration.

The order under review is affirmed.

Roth, P. J., and Compton, J., concurred.