[No. D011428. Fourth Dist., Div. One. Nov. 20, 1990.]

In re SAMUEL V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL V., Defendant and Appellant.

COUNSEL

Plourd, Scoville & Breeze and John W. Breeze, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Janelle B. Davis and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HUFFMAN, J.—On this appeal we determine Welfare and Institutions Code[1] section 625, subdivision (a) does not violate federal constitutional equal protection rights of a juvenile by allowing a peace officer to arrest juvenile misdemeanants solely on probable cause without a warrant or any requirement the offense be committed in the officer's presence. In the underlying case in which this issue was presented, a supplemental petition was filed pursuant to section 602 alleging 14-year-old Samuel V. brandished a weapon in violation of Penal Code section 417, subdivision (a)(1), a misdemeanor,[2] and carried a concealed dirk or dagger in violation of Penal Code section 12020, subdivision (a), a felony.[3] After Samuel admitted the felony allegation, the juvenile court at the disposition hearing ordered him continued as a ward of the court[4] and detained in juvenile hall pending placement in a 24-hour school.

Samuel appealed, contending his warrantless arrest for the brandishing violated his equal protection rights under the federal Constitution because section 625, subdivision (a) eliminates, in the case of a juvenile, the "in the

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] Penal Code section 417 recites, in relevant part: "(a)(1) Every person who, except in self-defense, in the presence of any other person, draws or exhibits any deadly weapon whatsoever, other than a firearm, in a rude, angry or threatening manner, . . . is guilty of a misdemeanor punishable by imprisonment in the county jail for a term of not less than 30 days."

[3] Penal Code section 12020, subdivision (a) recites, in relevant part: "Any person . . . who . . . carries concealed upon his or her person any dirk or dagger, is guilty of a felony . . . ."

[4] Samuel was declared a ward of the court a year earlier after he had admitted the burglary allegations of a section 602 petition. At that time he was placed in his mother's home under certain terms of probation.

presence of the arresting officer" requirement of Penal Code section 836.[5] We affirm the juvenile court's order.

## BACKGROUND

Peace officer Charles Pugsley went to Samuel's apartment in a complex in Chula Vista to investigate a report Samuel had brandished a knife in the complex. Samuel was home, but his mother was not. Pugsley told Samuel he needed to speak to him and his mother about a case and that his mother should contact him. When she did so, Pugsley told her to bring Samuel to the police station so he could arrest him. In response to her belief Samuel would refuse to cooperate, Pugsley said, " 'Don't tell him he's going to be arrested, . . . just tell him I want to talk to him.' " Pugsley did not have a warrant for Samuel's arrest.

When Samuel's mother brought him to the police station, she stayed in the business office while Pugsley took Samuel to an interview room. Without advising him of his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights, Pugsley told Samuel he wanted to talk to him about a brandishing incident which had occurred at his complex the previous month. Samuel admitted he was involved in the incident. He said he had threatened a man with a butcher knife when the man had gotten in his sister's face, and he wasn't going to stab the man, only threaten him. Pugsley then advised Samuel of his *Miranda* rights, and Samuel said he did not wish to talk further to him.

Thereafter, as Pugsley was filling out a juvenile contact report, he asked Samuel what school he had last attended, if he carried a knife most of the time, if he was involved in a gang, and if he had a knife on him. Samuel answered he carried a knife most of the time for protection and he belonged to the Imperial gang. Samuel then pulled a six- and one-half-inch butcher knife from his pants and gave it to Pugsley. Pugsley arrested Samuel for violating Penal Code sections 417, subdivision (a)(1), and 12020, subdivision (a).

---

[5] Section 625, subdivision (a) recites: "A peace officer may, without a warrant, take into temporary custody a minor: [¶] (a) Who is under the age of 18 years when such officer has reasonable cause for believing that such minor is a person described in Section . . . 602."

Section 602 recites: "Any person who is under the age of 18 years when he violates any law of this state . . . defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

Penal Code section 836 recites in relevant part: "A peace officer may . . . without a warrant, arrest a person: [¶] 1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence [¶] 2. When a person arrested has committed a felony, although not in his presence."

Samuel's motion to suppress his statements and the knife on the ground they had been obtained as the result of illegal questioning was denied. He subsequently admitted the Penal Code section 12020, subdivision (a) allegation and the Penal Code section 417, subdivision (a)(1) allegation was dismissed. After disposition, this appeal followed.

## DISCUSSION

Samuel concedes Pugsley had "reasonable cause" (§ 625, subd. (a)) to arrest him for the brandishing charge. He contends, however, the unconstitutionality of section 625, subdivision (a) rendered his arrest illegal, and therefore the dispositional order should be reversed on grounds the juvenile court erred in failing to grant his suppression motion brought under section 700.1.

■ Preliminarily, we note the People contend Samuel may not challenge the constitutionality of section 625, subdivision (a) because he did not raise the issue below as a ground for his motion to suppress and he admitted to the allegations of the petition. However, section 800 permits review on appeal of a ruling on a motion brought under section 700.1 "even if the judgment is predicated upon an admission of the allegations of the petition," and an issue involving a pure question of law arising from facts which are undisputed may be raised for the first time on appeal. (*People v. Butler* (1980) 105 Cal.App.3d 585, 588 [164 Cal.Rptr. 475]; *People v. Mills* (1978) 81 Cal.App.3d 171, 175-176 [146 Cal.Rptr. 411].) The People's assertion Samuel's contention as to the constitutionality of section 625, subdivision (a) involves mixed issues of law and fact is not supported by the record.

More specifically, the challenged portion of the statute allows an officer to take a minor into custody without a warrant for a misdemeanor which was not committed in the officer's presence. Here, it is undisputed Pugsley took Samuel into custody, without a warrant, for a misdemeanor which was not committed in his presence. Accordingly, the constitutional issue is purely a question of law, and Samuel's failure to object to the statute in the juvenile court does not preclude him from doing so on appeal.

■ Turning briefly to the history of section 625, subdivision (a), the statute was enacted in 1961 in response to the Governor's Special Study Commission on Juvenile Justice. Previously, Penal Code section 836 had applied to both adult and juvenile misdemeanor arrests. (*In re Thierry S.* (1977) 19 Cal.3d 727, 735-736 [139 Cal.Rptr. 708, 566 P.2d 610].)

The commission recommended eliminating, in the case of juveniles, the "in the presence of the arresting officer" requirement of Penal Code section

836. The reasons for the recommendation were that most enforcement officers ignored the requirement when they arrested minors for misdemeanor offenses, and, in view of the broad language of section 602, the requirement "would serve no useful purpose." (*In re Thierry S.*, *supra*, 19 Cal.3d 727, 736.)

In 1971, without changing the relevant provisions of section 625, subdivision (a), the Legislature enacted section 625.1, which impliedly imposed an "in the presence" requirement for warrantless juvenile misdemeanor arrests. (*In re Thierry S.*, *supra*, 19 Cal.3d 727, 733, 742, 744.) In 1977, on the basis of section 625.1, the California Supreme Court, in *Thierry*, invalidated a warrantless arrest of a juvenile for a misdemeanor offense which was not committed in the presence of the arresting officer. The following year, the Legislature repealed section 625.1.

The foregoing chronology shows a consistent legislative determination to allow law enforcement officers to make warrantless arrests of juveniles for misdemeanor offenses without the "in the presence requirement" of Penal Code section 836.

■ Samuel contends this disparate treatment violates his equal protection rights. However, a similar contention was rejected in *In re Eric J.* (1979) 25 Cal.3d 522 [159 Cal.Rptr. 317, 601 P.2d 549], where the California Supreme Court reasoned: "Despite this disparity [between adult and juvenile procedures for imposing the maximum term of confinement], appellant has not been denied equal protection of the laws. The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner. [Citation.] Adults convicted in the criminal courts and sentenced to prison and youths adjudged wards of the juvenile courts and committed to the Youth Authority are not 'similarly situated.'

"For purposes of this discussion, the most significant difference between minors and adults is that '[t]he liberty interest of a minor is qualitatively different than that of an adult, being subject both to reasonable regulation by the state to an extent not permissible with adults [citations], and to an even greater extent to the control of the minor's parents . . . .

" 'The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.] The state does not have the same purpose in sentencing adults to prison that it has in committing minors to the Youth Authority. Adults convicted in the criminal courts

are sentenced to prison as punishment (Pen. Code, § 1170, subd. (a)(1)[)] while minors adjudged wards of the juvenile courts are committed to the Youth Authority for the purposes of treatment and rehabilitation (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65].)" (*Id.* at pp. 530-531, fn. omitted, original italics.)

Although *Eric J.* involved terms of confinement and this case involves arrest, the foregoing reasoning is equally applicable here. In other words, adults and minors arrested for misdemeanor offenses are not similarly situated because minors are subject to greater regulation by the state than adults, and the state's purpose in arresting minors is rehabilitative while the state's purpose in arresting adults is principally punitive.

Samuel argues the reasoning of *Eric J.* as to the different purposes in juvenile and adult confinements is undermined by the 1984 amendment to section 202 of the Welfare and Institutions Code, which puts an increased emphasis on punishment and public protection as the standards by which juvenile dispositions are evaluated.

However, the reference to punishment in the amended section 202 reinforces the distinction between the purposes underlying the juvenile and adult procedures. The amended statute recites in relevant part: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive *care, treatment and guidance which is consistent with their best interest*, which holds them accountable for their behavior, and which is appropriate for their circumstances. *This guidance may include punishment that is consistent with the rehabilitative aspects of this chapter.*" (§ 202, subd. (b), italics added.)

In sum, the state's punishment of minors is a means to an end, or a "rehabilitative tool" (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 57 [260 Cal.Rptr. 258]), while the criminal justice system for adults has a purely punitive component separate from its rehabilitative goals. The adult system distinguishes between misdemeanors and felonies not only by way of punishment, but also by procedural process. (See Pen. Code, §§ 17, 853.9, 952, 954 and, in particular, 1170, subd. (a)(1).)[6] As Justice Kaus said in *In re Issac G.* (1979) 93 Cal.App.3d 917 [156 Cal.Rptr. 123] in response to a minor's equal protection challenge to his period of confinement, "surely the

---

[6] Penal Code section 1170, subdivision (a)(1) provides in pertinent part: "The Legislature finds and declares that *the purpose of imprisonment for crime is punishment.* This purpose is best served by terms proportionate to the seriousness of the offense with provision for uniformity in the sentences of offenders committing the same offense under similar circumstances." (Italics added.)

different purposes of the adult Determinate Sentencing Act and of the indeterminate juvenile procedure prohibit the facile equal protection analysis for which appellant contends." (*Id.* at p. 920.)

Equally facile is Samuel's argument that the "in the presence" requirement of Penal Code section 836 should be applied to juvenile arrests. Such an application would defeat the state's purpose in monitoring juvenile conduct in order to "nip budding character defects before they blossom into adult criminal behavior." (*In re Reginald C.* (1985) 171 Cal.App.3d 1072, 1075 [217 Cal.Rptr. 768].) Quoting Justice Kaus again, "[we should] hesitate before we take bits and pieces from the Penal Code and—flying the banner of equal protection—declare that there is no reasonable basis for not finding them in the Juvenile Court Law." (*Alex T.* v. *Superior Court* (1977) 72 Cal.App.3d 24, 30 [140 Cal.Rptr. 17].)

This admonition is particularly appropriate here, as "a court can never . . . transform the conduct that led to a minor's wardship into either a 'felony' or a 'misdemeanor.'" (*In re Michael S.* (1983) 141 Cal.App.3d 814, 817 [190 Cal.Rptr. 585].) ■ This is so, because the adult felony/misdemeanor distinction is based on punishment (Pen. Code, § 17, subd. (a)), and the juvenile court law, which "virtually ignores all distinctions between misdemeanors and felonies" (*Alex T.* v. *Superior Court, supra,* 72 Cal.App.3d 24, 31), is not. Because Samuel's equal protection argument ignores these basic differences in the two systems, the argument is without merit.

### DISPOSITION

The order appealed from is affirmed.

Benke, Acting P. J., and Lim, J.,* concurred.

A petition for a rehearing was denied December 13, 1990, and the opinion was modified to read as printed above.

---

* Assigned by the Chairperson of the Judicial Council.