Filed 12/31/14  In re L.M. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In Re L.M., a Person Coming Under the Juvenile Court Law. | H039491 (Santa Cruz County Super. Ct. No. J22481) |
| THE PEOPLE,  Plaintiff and Respondent,  v.  L.M.,  Defendant and Appellant. | |

After an unsuccessful motion to suppress evidence (Welf. & Inst. Code, § 700.1),[1] minor L.M. admitted one count of possessing a concealable firearm as a minor (Pen. Code, § 29610), which was alleged as a felony in a wardship petition filed in September 2012 (Petition A).  Minor was initially placed on deferred entry of judgment (DEJ), which the juvenile court terminated after minor admitted another count of possessing a concealable firearm, alleged as a felony in a second wardship petition filed in January 2013 (Petition B).  (§§ 790, 725, 727.1.)

On appeal, minor challenges the detention which resulted in Petition A.  We will conclude that officers had reasonable suspicion under the totality of the circumstances to

_____

[1]  Unspecified statutory references are to the Welfare & Institutions Code.

detain minor when he ran from them at night and continued running after the officers yelled, "Stop, Police!" Though we will find that minor's detention was lawful, we will reverse the dispositional order and remand the matter to allow the juvenile court to exercise discretion under section 702 in determining whether the sustained offenses are misdemeanors or felonies.

## I.    JUVENILE COURT PROCEEDINGS

According to testimony received at the suppression hearing, Watsonville Police Officer Scott Parsons and Santa Cruz County Sheriff's Sergeant Stefan Fish were patrolling in the City of Watsonville as part of the Santa Cruz County Gang Task Force on September 22, 2012. Officer Parsons was driving Sergeant Fish's patrol vehicle, an unmarked dark green Ford Crown Victoria equipped with spotlights next to each side mirror and emergency lights between the rear-view mirror and the windshield. Both officers were wearing black shirts with "Gang Task Force" written on them and black pants.

At approximately 1:40 a.m., the officers noticed an Acura sedan at a stop sign or stoplight that caught their attention because the driver's side window was "foggy or rusted" such that the officers could not see into the window from a distance of about 15 feet. Sergeant Fish testified that Acuras are one of the most commonly stolen cars based on the "stolen vehicle hot sheet[s]" compiled by his dispatch office. The Acura was the only car in the area other than the patrol car. The officers followed the Acura and entered the car's license plate into the patrol car's computer aided dispatch (CAD) system. From the CAD data the officers learned that the vehicle's registration was valid and it was not reported stolen. The CAD information also showed that the car was involved in an incident in August 2012 where one occupant was arrested for possession of an illegal knife.

The officers followed the Acura without using the patrol car's emergency lights or siren along Ohlone Parkway and continued to do so as it turned right into the Stone Creek

2

Apartment complex. Officer Parsons testified from his experience as a patrol officer that the Stone Creek Apartments were "not nearly as bad" as other complexes regarding crime, but that "it is still a problem with the youngsters" and "it's not one of the better places that I know of ... ." The Acura drove slowly around the complex's private road, followed four or five car lengths behind by the patrol car. The Acura eventually parked in a carport stall labeled "41" in an area with "a fair amount of ambient lighting" and Officer Parsons parked the patrol car perpendicular to the Acura but slightly offset so it did not block the Acura's ability to leave. The carport used by the Acura was apparently located closer to an alternative entrance to the apartment complex, which seemed suspicious to Officer Parsons because "[i]t was a spot that was numbered which led me to believe that was somebody's spot [who] lived at the Stone Creek Apartments," and the officer assumed that a resident would use the closer entrance. Sergeant Fish confirmed on cross examination that at the time the Acura pulled into the carport he had not observed the car or its occupants commit any violations of law.

Immediately after stopping, Officer Parsons focused his driver's side spotlight on the Acura and as he did that doors on both sides of the Acura opened. Within seconds both the driver and minor, who had been seated in the right front passenger's seat of the Acura, got out of the car. The officers got out of their car, minor gave Sergeant Fish "a concerned look" for "two seconds tops," and then turned and ran towards the front of the Acura and away from the officers. Both officers yelled "Stop, Police!" two or three times and Officer Parsons chased minor. Though the driver stopped after taking a few steps, minor disregarded the officers' directives and continued running. During the chase, which lasted between 20 and 30 seconds, minor fell twice. Officer Parsons caught up to minor after his second fall and subdued him by placing his knee on minor's back so that minor's stomach was facing the ground. The officer handcuffed minor for officer safety because "a lot of the suspects that have run have either had guns or knives" and conducted a pat search. When he rolled minor to his left side so that minor's right side

3

was facing up, Officer Parsons saw the butt of a handgun in minor's right pants pocket and arrested him.

The People filed Petition A on September 24, 2012, alleging one count of felony possession of a concealable firearm by a minor (Pen. Code, § 29610). Minor moved to suppress all evidence obtained as a result of his detention and arrest at the Stone Creek Apartments. (§ 700.1.) After hearing the officers' testimony and arguments from counsel, the juvenile court denied the suppression motion. The court found that the following constituted "specific and articulable facts" giving rise to reasonable suspicion for minor's detention: the Acura had "steamed windows" and was involved in police contact the previous month that led to an arrest for a weapons offense; the incident occurred at 1:40 a.m. in an area with ambient lighting at an apartment complex somewhat "prevalent with crime"; the car was not registered to the apartment complex and took "purportedly a strange route through an apartment complex"; a "hot sheet" identified Acuras as targeted vehicles; and minor's initial flight as well as his continued flight after the officers identified themselves as police.

After the juvenile court denied his motion to suppress, minor admitted Petition A's one count of possessing a concealable firearm by a minor. (Pen. Code, § 29610.) At that hearing, the court advised minor of his constitutional rights, informed him that "[t]here's one charge pending now, the felony of September 22nd being in unlawful possession of a [concealable] firearm," found a factual basis for the charge, and placed minor on DEJ probation.

A probation officer conducted a probation compliance check in January 2013 and discovered a loaded revolver in a bedroom that minor shared with his brother. According to the probation officer's report, minor admitted to the probation officer that the revolver "was his." Minor was arrested and the People filed Petition B, alleging one felony count of possessing a concealable firearm by a minor (Pen. Code, § 29610) and one misdemeanor count of unlawful possession of live ammunition (Pen. Code, § 29650),

4

which was later dismissed with a *Harvey* waiver. (*People v. Harvey* (1979) 25 Cal.3d 754.) At a hearing in February 2013, the juvenile court advised minor of his constitutional rights and informed him that Petition B alleged "a felony; it's very, very serious." Minor then admitted the concealed firearm count and the court sustained Petition B. At a disposition hearing the following month, the juvenile court terminated DEJ, declared minor a ward of the court under section 602, and "placed [minor] in the care, custody and control of probation under their usual terms and conditions for suitable 24-hour placement." The court also imposed a number of probation conditions, including one stating: "Do not knowingly use, possess or be under the influence of alcohol/controlled substances or any intoxicant." The juvenile court also orally ordered minor to "take all medication as prescribed."

## II. DISCUSSION

### A. MOTION TO SUPPRESS (§ 700.1)

Minor moved to suppress the gun found in his pocket that gave rise to Petition A under section 700.1, the juvenile counterpart to a Penal Code section 1538.5 motion to suppress. (*In re Steven H.* (1982) 130 Cal.App.3d 449, 453.) On appeal, minor argues that his detention was unlawful and the juvenile court erred in denying the suppression motion.

In reviewing the denial of a motion to suppress, we defer to the trial court's findings of fact if they are supported by substantial evidence and we exercise our independent judgment to determine the lawfulness of the search or seizure. (*People v. Miranda* (1993) 17 Cal.App.4th 917, 922.) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*).)

5

To review the reasonableness of minor's detention, we must first determine the point at which he was "seized" for Fourth Amendment purposes. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, ' "by means of physical force or show of authority," ' terminates or restrains his freedom of movement, [Citations] ... ." (*Brendlin v. California* (2007) 551 U.S. 249, 254.) A seizure through a show of authority occurs when a reasonable person would have believed he or she was not free to leave or to decline an officer's request. (*People v. Zamudio* (2008) 43 Cal.4th 327, 341 (*Zamudio*).) Importantly although an officer may make a seizure by a show of authority and without the use of physical force, there is no seizure without *actual submission*. (*Brendlin, supra,* at p. 254.)

The United States Supreme Court's opinion in *California v. Hodari D.* (1991) 499 U.S. 621 (*Hodari D.*), is instructive. In *Hodari D.*, four or five youths (including Hodari) who were huddled around a car late at night in a "high-crime area" fled on foot when they saw an unmarked police car approaching. (*Id.* at pp. 622-623.) While fleeing, Hodari discarded a small object that turned out to be crack cocaine before being tackled by an officer and arrested. (*Id.* at p. 623.) In attempting to suppress the cocaine, Hodari argued he was seized for Fourth Amendment purposes at the moment he saw the officer running toward him. (*Ibid.*) The Supreme Court disagreed, stating that even if the officer's "pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled." (*Id.* at p. 629; accord *United States v. Baldwin* (2007) 496 F.3d 215, 218 [" '[A]n order to stop must be obeyed or enforced physically to constitute a seizure.' [Citation]."].) In so holding, the court reasoned that given the risk to the public associated with street pursuits, "compliance with police orders to stop should ... be encouraged." (*Hodari D., supra,* at p. 627.)

6

Applying this rule to the facts as determined by the juvenile court, the officers made a show of authority when they yelled "Stop, Police!" at the occupants of the Acura because a reasonable person would have believed he or she was not free to leave or to decline their order to stop. (*Zamudio, supra,* 43 Cal.4th at p. 341.) However, minor continued to run away, and therefore was not detained, until Officer Parsons caught up with him 20 to 30 seconds later.

Turning to the reasonableness of the detention, the officers noticed the Acura in which minor was riding at around 1:40 a.m. because the driver's side window was "foggy or rusted" and that make of car appeared with some frequency on a stolen vehicle "hot sheet" compiled by the Santa Cruz County Sheriff's Department. A CAD query informed the officers that the car had been involved in an incident the previous month where an individual was arrested for possession of an illegal knife. The Acura appeared to use the less efficient of two possible entrances to reach the apartment complex carport where it eventually parked. When Officer Parsons trained a spotlight on the Acura, the driver and minor got out, minor gave a "concerned look" for a short time and then ran. When the officers explicitly identified themselves as peace officers by yelling "Stop, Police!," minor continued to run away, fell once, got up and persisted in his flight until he fell a second time, allowing Officer Parsons to catch up with him.

Minor argues, based on *Souza*, that "flight alone" does not automatically provide officers with adequate suspicion to detain. Minor is correct that the California Supreme Court rejected a bright-line rule "that flight upon encountering a uniformed police officer or a marked patrol car is alone sufficient to justify a detention … ." (*Souza, supra,* 9 Cal.4th at p. 235.) However, it also explained that "flight from police is a proper consideration-and indeed can be a key factor-in determining whether in a particular case the police have sufficient cause to detain." (*Ibid.*) The *Souza* court also noted that "the *manner* in which a person avoids police contact" can be considered in determining the reasonableness of a detention and that "fleeing at the first sight" of the police "shows not

7

only unwillingness to partake in questioning but also unwillingness to be observed and possibly identified ... ." (*Id.* at pp. 234-235, original italics.)  Though it is possible that minor did not initially know that people in the unmarked car were peace officers, they made this clear when each yelled "Stop, Police!" multiple times.  Even assuming a lack of reasonable suspicion to detain minor before his flight, that persistent flight, considered along with the early hour of the morning, the apartment complex's reputation for at least some criminal activity, and the CAD report noting that an occupant of the Acura had been found in possession of an illegal knife the previous month, provided the officers with reasonable suspicion of criminal activity sufficient to justify minor's detention. (*Souza, supra,* 9 Cal.4th at p. 231.)

Minor attempts to overcome this finding of reasonable suspicion to detain by distinguishing the facts in *Souza* and other Fourth Amendment cases involving flight, for instance noting that the Stone Creek Apartments were not described as a high crime area. But nowhere does *Souza* describe the facts there as the bare minimum necessary to support a finding of adequate suspicion to detain.  (*Souza, supra,* 9 Cal.4th at p. 235, quoting *United States v. Cortez* (1981) 449 U.S. 411, 417 & fn. 2 ["courts must consider 'the totality of the circumstances-the whole picture.' "].)  We conclude minor's detention was reasonable and the juvenile court properly denied minor's section 700.1 suppression motion.

### B. DISCRETION TO TREAT OFFENSES AS MISDEMEANORS OR FELONIES (§ 702)

We agree with minor that the juvenile court erred by not orally declaring its awareness that it could treat minor's offenses as misdemeanors, as required by section 702 and *In re Manzy W.* (1997) 14 Cal.4th 1199, 1209 (*Manzy W.*).

Section 702 states, in relevant part: "If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."  In *Manzy W.*, the Supreme Court reaffirmed the importance of "strict compliance" with the

8

mandates of section 702. (*Manzy W., supra*, 14 Cal.4th at p. 1204.) The court noted that section 702 "serves the purpose of ensuring that the juvenile court is aware of, and actually exercises, its discretion" in determining whether a wobbler (a crime punishable as either a felony or misdemeanor) is a misdemeanor or a felony, which is "essential[] in order to establish the maximum period of physical confinement for the offense." (*Id.* at pp. 1206-1207.) "[N]either the pleading, the minute order, nor the setting of a felony-level period of physical confinement may substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or felony." (*Id.* at p. 1208.) In determining if remand is appropriate, the court stated, "[t]he key issue is whether the record as a whole establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit." (*Id.* at p. 1209.)

Minor admitted two counts of possessing a concealable firearm, violations of Penal Code section 29610. The parties agree that this offense is a wobbler and that section 702 therefore applies. (*In re Jose T.* (1997) 58 Cal.App.4th 1218, 1220-1221 [finding former Pen. Code, § 12101, reorganized without substantive change as Pen. Code, § 29610 (Stats. 2010, ch. 711, § 6, p. 4167), is a "wobbler"].)

Petition A and Petition B each identify the Penal Code section 29610 violations as felonies. The jurisdiction hearing minute order for Petition A and the disposition order for Petition B each note that the counts could be considered a misdemeanor or a felony and the box next to "felony" is checked. The March 2013 dispositional minute order also indicates a maximum term of confinement of three years, consistent with the felony term.

While the foregoing indicates that the court treated the counts as felonies, we nonetheless will remand the matter because the record does not conclusively establish that the juvenile court was aware of its discretion to treat the offenses as misdemeanors. (*Manzy W., supra,* 14 Cal.4th at p. 1209.) We note that the juvenile court made references to the counts as felonies at the hearings where minor admitted the counts, for

instance stating "[t]here's one charge pending now [in Petition A], the felony ... ."
However, we find these comments akin to restatements of what was contained in the
petitions rather than statements of understanding that the court was aware of its discretion
and exercised that discretion to treat the wobblers as felonies. The People rely on *In re
Michael S.* (1983) 141 Cal.App.3d 814, which found that a reference to a count as a
felony in the juvenile court's "official minutes" satisfied section 702. (*Id.* at p. 818-819.)
We find that case unpersuasive because, though never expressly disapproved, its holding
appears inconsistent with the our Supreme Court's later directive in *Manzy W.* that "the
minute order ... may [not] substitute for a declaration by the juvenile court as to whether
an offense is a misdemeanor or felony." (*Manzy W., supra,* 14 Cal.4th at p. 1208.)

## C. PROBATION CONDITION PROHIBITING USE OF CONTROLLED SUBSTANCES

The signed list of probation conditions in the clerk's transcript contains the
following condition: "Do not knowingly use, possess, or be under the influence of
alcohol/controlled substances or any intoxicant." Minor claims that condition is
unconstitutionally overbroad because it would "prevent[ ] the minor from utilizing
necessary medication in accordance with a valid prescription."

Claims that a probation condition is unconstitutionally vague or overbroad can be
raised even when, as here, minor did not object below, so long as the claim presents a
pure question of law that can be resolved without reference to the sentencing record. (*In
re Sheena K.* (2007) 40 Cal.4th 875, 887-889.) "A probation condition that imposes
limitations on a person's constitutional rights must closely tailor those limitations to the
purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*Id.*
at p. 890.)

Here, we need not determine minor's constitutional challenge because at the
March 2013 disposition hearing the juvenile court ordered minor to "take all medication
as prescribed." That condition was not memorialized in the written order, where the box
next to the condition, "Take medications as prescribed by your doctor," is not marked.

10

Because the juvenile court already provided a remedy for the potential defect identified by minor, we will direct the clerk of the trial court to prepare a new disposition order to include all conditions as pronounced.

### III.   DISPOSITION

The dispositional order is reversed and the matter is remanded with directions for the juvenile court to state on the record its determination of felony or misdemeanor status of the two violations of Penal Code section 29610, as required by section 702.  We also direct the clerk of the trial court to prepare a new dispositional order reflecting all conditions pronounced by the court, including:  "Take medications as prescribed by your doctor."

_____

Grover, J.


**WE CONCUR:**


_____

Bamattre-Manoukian, Acting P.J.


_____

Mihara, J.