Filed 6/3/15  In re L.F. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re L.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>L.F.,<br><br>     Defendant and Appellant. | A142296<br><br>(Solano County<br>Super. Ct. No. J42519) |

Minor L.F. appeals after the juvenile court sustained a wardship petition alleging she committed a criminal threat.  (Pen. Code,[1] § 422; Welf. & Inst. Code, § 602.)  On appeal, Minor contends the juvenile court:  (1) erred in finding she violated section 422, (2) erred in overruling her demurrer, (3) abused its discretion by not reducing the violation to a misdemeanor, (4) improperly failed to include a scienter requirement in a probation condition, and (5) improperly failed to inform her of the duration of her probation.  We shall modify the challenged probation condition to include an express knowledge requirement, and otherwise affirm the order.

## I.  BACKGROUND

Thomas F.'s two daughters attended Fairfield High School (FHS).  One evening in May 2014, one of his daughters told him she did not want to go to school after reading on

---

[1] All undesignated statutory references are to the Penal Code.

Twitter that "somebody was going to shoot up the school the following morning." The person "tweeting" was Minor, another FHS student. Thomas F. looked at the "tweets" on his daughter's phone and then found the Twitter account on his own phone. Although he was not one of Minor's "followers," Thomas F. was able to view the account by searching for her username.

The tweets in question were made over the course of approximately three hours. Among Minor's tweets were the following: "If I get a gun it's fact I'm spraying [five laughing emojis] everybody better duck or get wet";[2] "I'm dead ass [three laughing emojis] not scared to go to jail for shooting up FHS warning everybody duck"; "Nigga we ain't fighting I'm bringing a gun [six laughing emojis]"; "Mfs don't really kno me [two laughing emojis] I have touched a gun pointed one don't [. . .] Bitch I kno how to aim";[3] "Mfs tripping boii [three laughing emojis] I'm frfr black mask yellow tape homicide niggas better he cool";[4] "Ain't nobody safe ['100' emoji]"; "I'm finnah come to FHS like black opps stabbing niggas! Who really with it?"; "I feel sorry for whoever got c wing 1st period [four laughing emojis]"; "@[username] idk when shit go down prolly the next day"; "I hope ms Sheila run c wing that day";[5] "Oh yeah all my friends have c wing so d wing"; "And wtf lol tf you getting popped first fr try me [laughing emoji]"; "It's funny cause nobody fighting no more sooooo!! I'm just shootin niggas for fun"; "Mfs wanna test me now [three clapping hands emojis] you crazy I'm crazy too let's die shooting"; "I'm leaving school early and going to get my cousin gun now [three laughing emojis and two clapping hands emojis]"; "Y'all gonna make me go to jail before I step

---

[2] An emoji is "[a] small digital image or icon used to express an idea, emotion, etc., in electronic communications." (OED Online, *Emoji, n.* (March 2015) Oxford University Press <http://www.oed.com/view/Entry/389343> [as of May 6, 2015].) Example of emojis include a happy face and a laughing face.

[3] "Mfs" is an abbreviation for "Mother fuckers."

[4] "FrFr" means "for real [for] real."

[5] Sheila Bell was a campus monitor at FHS whose primary role was to maintain order and safety. She patrolled both C-wing and D-wing.

foot on campus [laughing emoji]"; "I really wanna a challenge shooting at running kids not fun [laughing emoji]"; "Ok I'm done and if I get called in by the FBI or something bout shooting up a school you Mfs really gonna get shot"; and "Kill or be killed!!" Thomas F. also testified that he saw a response on Minor's account in which someone offered to sell her a gun.

Some of Minor's tweets include laughing emojis and statements like "just kidding." For example, Minor tweeted: "Lmao I'm really jk tho [three laughing emojis] don't jump him and it's g frfr ['100' emoji] or ima really come spraying" [6] ; "Do y'all really think I'm that crazy it's a compliment" ; "I love my life [laughing emoji]." Minor's Twitter account showed that some Twitter users who responded to her tweets did so in a joking manner. For example, one user, "@[username]" tweeted to Minor "o you crazy [laughing emoji, devil emoji]."

Thomas F. grew concerned about the number and nature of the tweets and called the police. He was concerned for his daughters' safety, and neither of them attended school the next day.

A police officer arrived at Thomas F.'s house, and he showed the officer the tweets. The officer reviewed and took pictures of the tweets, spoke to Thomas F. and his daughter, and determined Minor's name and address. Thomas F. told the officer he was concerned about his children's safety and feared sending them to school the next day.

The officer went to Minor's home, placed her in handcuffs, and read her her constitutional rights. Minor said that she did not mean the statements she had made on Twitter and that they were a joke. She was unable to explain why she made the statements. She told the officer she was not angry. Minor and her mother told the officer there were no weapons in the house.

The same evening, Dr. William Cushman, a vice principal of FHS, received a text message from a former student informing him of tweets indicating that someone was

---

[6] "Lmao" is an abbreviation for "laughing my ass off" and "jk" is an abbreviation for "just kidding."

going to shoot up the school. Dr. Cushman asked for screen shots of the tweets. Dr. Cushman saw tweets that made specific references to parts of the school, C-wing and D-wing, and specific people. Dr. Cushman felt "[s]cared and nervous" because as the person in charge of the lockdown protocol in an emergency, he would have to "go out and clear the hallways and make sure people leave the rooms," and he would be in "as much danger as anybody else." Dr. Cushman contacted the school resource officer and the principal, and sent out a mass text to school faculty and staff about the issue. The following morning, Dr. Cushman decided to concentrate resources on C-wing. He sent a campus-wide email to the school's staff saying there had been a specific threat to C-wing and directed Bell, who had been specifically mentioned in the tweets, to remain in the office.

An intern at the district attorney's office testified that although she was not one of Minor's Twitter followers, she was able to look up Minor's Twitter account by searching for her username. Minor had about 500 followers. It was possible to create a private Twitter account that could be viewed only with permission, but Minor's account was not private.

Minor's best friend testified that she had read the tweets and did not take them seriously, and that the use of laughing emojis in the tweets indicated that Minor was joking. Minor's sister also testified that when she saw the tweets, she thought they were a joke due to the use of laughing and smiling emojis and the terms for "just kidding" and "laugh out loud." She had never known Minor to be violent or threaten others. No one in the family owned a gun, and Minor did not have access to a gun.

The district attorney filed a juvenile wardship petition alleging Minor had made felony criminal threats against "FAIRFIELD HIGH SCHOOL STUDENTS AND STAFF." (§ 422.) Minor demurred on the ground the petition failed to state a public offense, and the court overruled the demurrer.

The juvenile court sustained the petition after a contested hearing. The juvenile court found that the tweets were clearly a threat. The juvenile court also found specific intent that the tweets be taken as a threat because "[s]he had approximately 500 people on

4

her account . . . and the fact that some of those wouldn't take that as a serious threat is inconceivable." The juvenile court stated, "Two to three hours of tweets that—I just don't see how you can get around it. It was intended to be taken as a threat. There's anger in those. There's statements in there about the teacher going to be the first to get it, and other racial comments about they're going to be the first to get popped and all." The juvenile court was satisfied "beyond a reasonable doubt that the offense has occurred."

Minor moved to have the offense reduced to a misdemeanor, and the trial court denied the motion.

Minor was released to her mother and granted probation. Among Minor's terms of probation, she was prohibited from possessing any weapons or ammunition.

## II. DISCUSSION

### A. Section 422 Violation

Minor contends there was insufficient evidence to support a finding that she made a criminal threat under section 422. "To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) However, where the appellant raises a "plausible First Amendment defense" to a criminal threat conviction, we make an independent examination of the record in order to ensure that the speaker's free speech rights have not been infringed. (*In re George T.* (2004) 33 Cal.4th 620, 632 (*George T.*).) Credibility determinations and findings of fact that are not relevant to the First Amendment issue are not subject to independent review. (*Id.* at p. 634.) Thus, we defer to the lower court's credibility determinations but make an independent examination of the whole record to determine whether the facts establish a criminal threat. (*Ibid.*)

As noted in *George T.*, *supra*, 33 Cal.4th at page 630, not all threats are criminal. In order to prove a violation of section 422, the People must establish the following: (1) that Minor " 'willfully threaten[ed] to commit a crime which [would] result in death

5

or great bodily injury to another person,' " (2) that Minor made the threat " 'with the specific intent that the statement . . . be taken as a threat, even if there is no intent of actually carrying it out,' " (3) that the threat was, " 'on its face and under the circumstances' " in which it was made, " 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' " (4) that the threat actually caused the person threatened " 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228 (*Toledo*).)

Minor does not dispute that the evidence supports the first element of the offense but argues that there is insufficient evidence to establish the remaining elements.

### 1. *Specific Intent*

To determine whether Minor had the specific intent that her tweets be taken as a threat, section 422 "does not require that a threat be personally communicated to the victim by the person who makes the threat"; however, "it must be shown that [she] specifically intended that the threat be conveyed to the victim." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 861 (*Ryan D.*).) "[I]f one broadcasts a threat intending to induce sustained fear, section 422 is violated if the threat is received and induces sustained fear—whether or not the threatener knows [her] threat has hit its mark." (*People v. Teal* (1998) 61 Cal.App.4th 277, 281.)

Minor contends there is no evidence she intended to convey her threats to FHS students and staff through her Twitter account. We disagree. Minor had approximately 500 Twitter followers, and her account was publicly accessible. The posts themselves indicate that some of those who replied to, or "retweeted," Minor's posts were FHS students. The evidence is sufficient to support the juvenile court's factual finding that Minor intended to convey a threat.

We are not persuaded otherwise by Minor's reliance on *Ryan D.* There, a month after being cited for possession of marijuana, a minor submitted a painting in his art class depicting him shooting the officer who had cited him. The art instructor found the

6

painting to be " 'disturbing' " and " 'scary' " and showed it to an administrator. (*Ryan D.*, *supra*, 100 Cal.App.4th at p. 858.) A day later, an assistant principal confronted the minor, who admitted he was angry with the officer and that it was reasonable that she would eventually see the picture. (*Ibid.*) Later that day, the officer was shown the painting and " 'was pretty shocked' and 'upset' because it depicted somebody 'blowing [her] head off.' " (*Id.* at p. 859.) The juvenile court found the minor had made a criminal threat, and the appellate court reversed the trial court's order on this point, holding that the painting did not constitute a criminal threat in violation of section 422. (*Id.* at pp. 857, 865.) In doing so, the court noted that the minor had turned the painting into his class for credit, rather than displaying it to the officer or putting it in a location where he knew she would see it, and concluded the evidence was insufficient to support a finding that he intended the officer to see it. (*Id.* at p. 863.) Here, on the other hand, the evidence supports an inference that, in posting the threatening statements on her Twitter account, Minor intended to convey them to members of the victim group.

Relying on *In re Ricky T.* (2001) 87 Cal.App.4th 1132 (*Ricky T.*), Minor also argues the evidence does not show she intended her statements to be taken as a threat. The minor in *Ricky T.* was charged with violating section 422 after threatening his teacher. The minor stepped out of class to use the restroom. (*Id.* at p. 1135.) When he returned and found the door locked, he pounded on it; when the teacher opened the door, the door hit the minor. He became angry, cursed at his teacher, and said, "I'm going to get you." (*Ibid.*) The teacher felt physically threatened. (*Ibid.*) The police were called the following day. (*Id.* at p. 1138.) Division Four of the First Appellate District reversed the juvenile court's finding and held that there was no violation of section 422. (*Id.* at p. 1141.) The court concluded the remark was "ambiguous on its face and no more than a vague threat of retaliation without prospect of execution." (*Id.* at p. 1138.) Moreover, the court noted, the surrounding circumstances did not indicate gravity of purpose: There was no prior history of disagreements, the police were not called until the next day, and they did not interview the minor again until a week after the incident. (*Id.* at pp. 1137–1138.)

Minor contends her statements were similarly ambiguous because many of them were accented by symbols of laughing faces and some were accompanied by the terms such as "jk" or "Lmao," which, Minor argues, show her statements were meant as a joke. In the circumstances of this case, we cannot fault the juvenile court's findings. Minor's threatening statements were made over a period of hours, they included threats to shoot people in C-wing or D-wing, including one named staff member, and Minor stated she was going to get a gun. Moreover, Minor provided specific details about the impending shooting, going so far as clarifying that she would target D-wing instead of C-wing; she also stated she did not care about going to jail and threatened to shoot those who called the FBI. On these facts, it was reasonable for the juvenile court to conclude Minor intended her statements to be taken as a threat.

## 2. *Nature of the Threat*

Minor contends the tweets were too vague and general in nature to satisfy the requirement that a threat be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." (§ 422, subd. (a).)

To determine if a purported threat meets this standard, it must be examined "on its face and under the circumstances in which it was made." (*Ricky T., supra,* 87 Cal.App.4th at p. 1136.) "The surrounding circumstances must be examined to determine if the threat is real and genuine, a true threat." (*Id.* at p. 1137) Examples of circumstances that may be considered include "the prior relationship of the parties and the manner in which the communication was made." (*Ryan D., supra,* 100 Cal.App.4th at p. 860.) " ' "[U]nequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances." ' " (*George T.*, *supra,* 33 Cal.4th at p. 635.) The four elements are " ' "simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim." ' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807.) " 'A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because

8

it does "not communicate a time or precise manner of execution[;] section 422 does not require those details to be expressed." ' " (*Id.* at p. 806.)

The evidence here supports the juvenile court's conclusion that Minor's statements were sufficiently "unequivocal, unconditional, immediate and specific" to constitute a criminal threat under section 422. Minor mentioned her intention to direct violence at specific parts of the school, she said she was "sorry for whoever got c wing 1st period," she said she was "leaving school early and going to get [her] cousin['s] gun now," and her Twitter page included the statement, "idk when shit go down prolly the next day." Indeed, Dr. Cushman notified the school's staff the next morning, "We have a very specific threat. It's limited to C-wing."

Given the specific references to parts of FHS and an individual staff member and the indication the threats would be carried out in first period, "prolly the next day," the juvenile court properly found the threats were " 'so unequivocal, unconditional, immediate, and specific,' " that they constituted a criminal threat. (*Toledo, supra,* 26 Cal.4th at p. 227.)

### 3. *Sustained and Reasonable Fear*

Minor contends the People failed to prove the threats actually caused students and staff reasonably to suffer sustained fear. Section 422 applies where "the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety.' " (*Toledo*, *supra*, 26 Cal.4th at p. 228.) "The phrase to 'cause[] that person reasonably to be in sustained fear for his or her own safety' has a subjective and an objective component. A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances." (*Ricky T.*, *supra*, 87 Cal.App.4th at p. 1140.) "Sustained fear" means "a period of time 'that extends beyond what is momentary, fleeting, or transitory.' " (*Ibid.*) What constitutes "sustained fear" may depend on the circumstances: "Fifteen minutes of fear of a defendant who is armed, mobile, and at large, and who has threatened to kill the victim and her daughter, is more than sufficient to constitute 'sustained' fear for purposes of this element of section 422." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

9

Minor contends this element is not satisfied because (1) rather than immediately calling law enforcement to arrest her, Dr. Cushman called the school resource officer and principal; (2) Thomas F.'s testimony about his daughter's statements to him were admitted not for their truth but to explain his actions; and (3) although Thomas F. testified to his own fear, he was not among the students and staff at the school, the alleged victims of the offense.

Whether or not the fear of Thomas F. or his daughter may properly be considered, we conclude the evidence of Dr. Cushman's fear is sufficient to support a finding that this element has been met. Dr. Cushman testified that he was "[s]cared and nervous" because as the person in charge of the lockdown protocol, he would be in danger. His actions show he took the threat seriously; he called the principal and the school resource officer and he sent a mass text to staff members that evening. The next morning he told Bell to remain in the office and sent an email to the entire school staff telling them there had been a specific threat to C-wing. This evidence is sufficient to support a finding that Minor's victims were in sustained, reasonable fear due to Minor's tweets.

Viewing the evidence in the light most favorable to the judgment, the trial court reasonably concluded that all the elements of a criminal threat were met. Further, because the juvenile court properly found Minor's statements were criminal threats within the meaning of section 422, the statements were not protected by the First Amendment. (*George T.*, *supra*, 33 Cal.4th at pp. 633–634.)

### B. Demurrer

Minor argues that the juvenile court erred in overruling her demurrer because the petition failed to state a public offense or to give her adequate notice of the charges against her.[7] Specifically, she contends the petition was impermissibly vague because it

---

[7] A defendant may demur to an accusatory pleading when it appears on the face of the pleading "[t]hat the facts stated do not constitute a public offense." (§ 1004, subd. (4).) While there is no statutory authorization for a demurrer in juvenile cases, there is case law supporting the use of a demurrer in juvenile cases. (*In re Jamil H.* (1984) 158 Cal.App.3d 556, 560–561 [juvenile court should have sustained minor's demurrer to § 602 petition on ground it failed to advise him adequately of charge against

failed to specify a person who received the threat, but instead named as the victim the students and staff of the high school.

The petition alleged Minor violated section 422 by "threaten[ing] to commit a crime which would result in death and great bodily injury to FAIRFIELD HIGH SCHOOL STUDENTS AND STAFF, with the specific intent that the statement be taken as a threat," that the threat was "so unequivocal, unconditional, immediate and specific as to convey to FAIRFIELD HIGH SCHOOL STUDENTS AND STAFF a gravity of purpose and an immediate prospect of execution," and that "FAIRFIELD HIGH SCHOOL STUDENTS AND STAFF was reasonably in sustained fear of his/her safety and the safety of his/her immediately family." Minor demurred to this allegation on the ground it failed to state a public offense because it did not identify a specific person who had received the threat. The juvenile court overruled the demurrer, concluding that if a threat was made to a group of people, the individuals did not have to be named in the petition. However, the court stated that Minor should receive discovery about the identity of the individual student who was in fear—apparently Thomas F.'s daughter— and the district attorney indicated her name was in the police report and Minor's counsel had that information.

"Due process of law requires that an accused be advised of the charges against [her] so that [she] has a reasonable opportunity to prepare and present [her] defense and not be taken by surprise by evidence offered at [her] trial." (*People v. Jones* (1990) 51 Cal.3d 294, 317; see § 952.[8]) "A defendant's right to be informed of the charges 'is

---

him]; *In re Rudolfo A.* (1980) 110 Cal.App.3d 845, 853–857 [juvenile court should have sustained minor's demurrer on ground pleading was insufficient to advise him adequately of charge against him]; see also *In re Rottanak K.* (1995) 37 Cal.App.4th 260, 268–269 [People may appeal orders sustaining demurrers without leave to amend in juvenile matters].)

[8] Section 952 provides: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. . . . It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. . . ."

11

satisfied when the accused is advised of the charges against [her] so that [she] has a reasonable opportunity to prepare and present a defense and is not taken by surprise by the evidence offered at trial.' " (*People v. Stone* (2009) 46 Cal.4th 131, 141 (*Stone*).) "[W]e may not conclude that a complaint is insufficient, or set aside a guilty plea or sentence unless we first determine that a 'defect or imperfection in matter of form' has 'prejudice[d] a substantial right of the defendant upon the merits.' [Citation.]" (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 999.) Applying this rule, our high court in *Stone* concluded that where a defendant was accused of attempted murder by firing a single shot at a group of 10 people, "it would be sufficient to allege enough facts to give notice of the incident referred to and that the defendant is charged with attempted murder. For example, . . . it would have been sufficient to allege that defendant committed attempted murder, in that on or about [the date in question], he attempted to murder a member of a group of persons gathered together in a parking lot in [the city in question]." (*Stone*, *supra*, 46 Cal.4th at pp. 136, 141–142.)

On this record, we cannot conclude Minor's substantial rights were prejudiced. The evidence showed that she published her threats to anyone who saw her public Twitter account, which had hundreds of followers, and that she threatened anyone in C-wing or D-wing at the high school. She cannot now complain that the recipients of her threats were not all known by name. Moreover, the juvenile court ensured that Minor had been informed of the name of the student mentioned in the police report. In the circumstances, Minor's right to notice of the allegations against her was not violated, and the juvenile court did not abuse its discretion in overruling her demurrer.

## C. Request to Treat Offense as Misdemeanor

Minor argues that the juvenile court abused its discretion when it refused to reduce the criminal threat violation from a felony to a misdemeanor. Minor claims the juvenile court improperly based its decision on unrelated school shootings and other irrelevant factors.

12

A criminal threat in violation of section 422 is a wobbler offense,[9] or an offense that may be sentenced as a felony or a misdemeanor. (*People v. Douglas* (1999) 20 Cal.4th 85, 88.) When a minor is found to have committed a wobbler, the juvenile court, exercising its discretion, must declare the offense to be a misdemeanor or a felony. (Welf. & Inst. Code, § 702; *In re Manzy W.* (1997) 14 Cal.4th 1199, 1201, 1207; *In re Jacob M.* (1989) 210 Cal.App.3d 1178, 1181–1182.) "[T]he court must consider which description applies and expressly declare on the record that it has made such consideration, and must state its determination as to whether the offense is a misdemeanor or a felony." (Cal. Rules of Court, 5.780(e)(5).) Trial courts have broad discretion to reduce a wobbler offense charged as a felony to a misdemeanor. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 974, 977–978 (*Alvarez*); *In re Curt W.* (1982) 131 Cal.App.3d 169, 184.) Factors the court may consider include " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or [her] traits of character as evidenced by [her] behavior and demeanor at the trial." (*Alvarez*, *supra*, 14 Cal.4th at p. 978.) Where, as here, the challenge is to the lower court's exercise of its discretion, the burden is on Minor to " 'clearly show that the sentencing decision was irrational or arbitrary.' " (*Id.* at p. 977.)

The petition alleged Minor committed a felony violation of section 422. After the juvenile court sustained the petition, Minor moved to have her offense reduced to a misdemeanor. She contended she had strong family support and that a felony adjudication would impair her ability to join the Navy or the Job Corps. Noting that Minor had made the threats over the course of two or three hours and that the tweets showed "some real hostility and anger," the court deferred its final decision until it reviewed the probation report. (Cal. Rules of Court, rule 5.780(e)(5).) The probation

---

[9] A criminal threat in violation of section 422 is punishable "by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (§ 422, subd. (a).) If an adult is found guilty of violating section 422 and is punished in county jail, the offense is deemed a misdemeanor. If that adult is punished in state prison, the offense constitutes a felony. (§ 17, subds. (a), (b).)

officer's report indicated that Minor had reported that she was receiving A's and C's in school; in fact, however, her current progress report showed two F's, three D's, and one C. Her records showed she had a pattern of defiant behavior at school and that she had been suspended several times for such behavior. Minor described her relationship with her mother as "great," but her mother reported that she and Minor had a tense relationship and that Minor was defiant and disrespectful at home. Minor had been attending counseling for depression, and shortly before her offense had been hospitalized after attempting to commit suicide by taking pills that had been prescribed for her depression. She described her offense as a joke and a "stupid" mistake, but she did not express remorse for her actions.

The juvenile court denied Minor's request to reduce the offense to a misdemeanor. In doing so, the court stated, "Had she not attempted suicide, had she had good grades, had she not had any history at all, this was just some, as she put it, 'stupid joke,' I think I could see it. But given the state of our society right now and the things that have happened, Columbine and Connecticut and Santa Barbara, I think I even mentioned at the jurisdiction hearing, it's kind of like saying something on an airplane to a TSA agent. You may be joking, but people don't take it as a joke anymore. [¶] And given what probation described as a hostility towards authorities or defiant and oppositional attitude at times, the fact that she tried to commit suicide, was just released from the hospital some two days, or two weeks, or very shortly before she did this, and the fact that she said she was getting As and Cs, and then they would go down to Fs and Ds. [¶] Even if she intended this as a joke at the time, I don't think the Court can treat it as a joke. And the Court cannot, in good [conscience], treat it as a misdemeanor." The court acknowledged that its decision might have harmful consequences for Minor's future, but in light of the "gravity of her language," concluded it could not grant Minor's request.

Based on this record, the juvenile court could reasonably conclude that Minor's credibility was diminished by the inaccurate statements she had made to the probation officer, that her recent suicide attempt raised a concern that her threats were meant seriously, and that she did not appreciate the wrongfulness of her offense. Nor does the

14

juvenile court's mention of other school shootings lead us to conclude it relied on improper factors in making its decision; rather, the court could properly note that as a result of those widely publicized events, the recipients of Minor's threats were more likely to take them seriously and experience fear. Considering the "extremely deferential and restrained standard by which appellate courts are bound in these matters" (*Alvarez*, *supra,* 14 Cal.4th at p. 981), we find no abuse of discretion in the juvenile court's ruling.

### D. Vague Probation Term

Among Minor's terms of probation was an order that she not possess any weapons or ammunition. Minor contends this condition is constitutionally vague because it lacks an express knowledge requirement. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889–892 (*Sheena K.*).) Minor asks us to modify the probation condition to state: "The minor shall not knowingly possess any ammunition, or deadly or dangerous weapons." The Attorney General does not object to the proposed modification.

A probation condition that forbids certain conduct is impermissibly vague and overbroad unless it is sufficiently precise for a probationer to know in advance what behavior is forbidden. (See *Sheena K.*, *supra*, 40 Cal.4th at pp. 891–892 [in absence of express requirement of knowledge, probation condition limiting association with anyone disapproved of by probation was unconstitutionally vague].) Where a probation condition suffers from this defect, the appellate court may modify the condition to include the missing knowledge requirement. (See *id*. at pp. 889, 892; see also *In re Victor L.* (2010) 182 Cal.App.4th 902, 912–913, 931 [modifying probation condition prohibiting presence where dangerous or deadly weapons, firearms, or ammunition exist to include express knowledge requirement]; *People v. Freitas* (2009) 179 Cal.App.4th 747, 752–753 [modifying probation condition to specify that defendant not *knowingly* possess guns and ammunition].)

We shall therefore modify the probation condition to add an express knowledge requirement.

15

### E. Duration of Probation

After adjudging Minor a ward of the court, the juvenile court granted probation, placed her in her mother's custody under the supervision of the probation officer, and set the matter for an annual review in June 2015. Without citation to authority, Minor argues the matter should be remanded so the juvenile court may specify the duration of her probation.

We first note that Minor failed to raise her objection in the juvenile court, and has therefore arguably forfeited it. (See *In re Josue S.* (1999) 72 Cal.App.4th 168, 172–173; *In re Khonsavahn S.* (1998) 67 Cal.App.4th 532, 537; but see *Sheena K.*, *supra*, 40 Cal.4th at pp. 885–889 [facial challenge that probation condition unconstitutionally vague or overbroad not forfeited by failure to raise it below].) In any case, her contention is meritless.

Welfare and Institutions Code section 727, subdivision (a)(1), provides that after declaring a minor a ward of the court, "the court may make any reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor . . . subject to further order of the court." Except in cases not relevant here, "the court shall order the care, custody, and control of the minor or nonminor to be under the supervision of the probation officer," who may place the minor in the approved home of a relative. (§ 727, subd. (a)(3).) Likewise, California Rules of Court, rule 5.790 provides that at a disposition hearing, the court may either dismiss the petition, place the child on probation for no more than six months without declaring the child a ward of the court, or declare the child a ward of the court. (Cal. Rules of Court, rule 5.790(a)(2).) When placing a child on probation, the court must set reasonable terms and conditions of probation. (Cal. Rules of Court, rule 5.790(b).) We are aware of nothing in the statutory or regulatory schemes that requires a juvenile court to specify the length of probation; rather, it is implicit in Welfare and Institutional Code section 727, subdivision (a)(1), that probation will continue until "further order of the court." Here, the court will review the matter, and presumably make any necessary further orders, at the scheduled annual review hearing.

16

## III.    DISPOSITION

The weapon probation condition is modified to read:  "Minor shall not knowingly possess any ammunition, or deadly or dangerous weapons."  As so modified, the order is affirmed.

_____
Rivera, J.

We concur:

_____
Reardon, Acting P.J.

_____
Streeter, J.